By the Court—Woodruff, J.
It must be deemed established that the defendants did not purchase the articles for the use of which a recovery has been had by the plaintiffs.
That those articles belonged to the plaintiffs, as assignees of Goodyear & Ely, is not controverted. It is not claimed by the defendants that they made any purchase thereof from the plaintiffs. There was no evidence given on the trial that the articles were in fact included in the purchase made by the defendants from Rider & Brothers: on the contrary, the proof is full and uncontradicted that they were not included in that purchase. The jury have found that the plaintiffs did not include them in that purchase, and did not acquiesce in the payment to Rider & Brothers of the purchase money, consenting that the defendants take possession thereof, and use them under the belief that they were included in such purchase.
There was no evidence given on the trial that any agent or officer of the defendants ever supposed that the defendants ha,d in fact purchased the articles in question from anybody, except in the testimony of Emory Rider, who says he expected the Company would buy it, and supposed that the Company had bought it from the plaintiffs, having himself proposed to do so to the plaintiff Trotter. If the judgment record in a former action which was read on the trial be regarded as showing that the plaintiffs once claimed that they had sold the articles to the defendants, the entire record conclusively establishes that they had not.
*94 The main fact stands, therefore, prominent and free from doubt.
The defendants came to the possession of the plaintiffs’ goods, and by the plaintiffs’ consent have used them for many years, until in fact they are worn out or nearly so.
There is no ground for saying that either the possession or use of the property was tortious, for the owners were consenting to both.
Upon this fact alone, if the question arose between two individuals, it would not be doubtful that the party so using the other’s property was bound to pay what such use was reasonably worth, unless it was clearly shown that the permission to use was "given and accepted without any expectation of reward therefor.
Here there was, on the part of the plaintiffs, and on the part Of such agents of the defendants as are shown to have been aware of what was done, an expectation that the defendants would purchase the articles; so that there is no ground for saying that the plaintiffs or the agents of the defendants at any time supposed the plaintiffs were not to receive an equivalent for the property. Fo purchase having been actually made, the property was used by the defendants, the plaintiffs consenting to such use. "
It is, however, insisted that the relation which the plaintiffs bore to the defendants forbids the idea that the defendants contracted with them to pay for the use of the property; that if there could be no express contract, none can be implied; that the plaintiffs, by voluntarily suffering their property to be used in common with the property of the defendants, and without any express contract for payment, have only confused their goods with those of the defendants, and must bear the loss, or, at most, it should be treated as a voluntary courtesy, out of which no claim to compensation arises.
The act of incorporation declares that the Company (the defendants) “shall be under the control of and be managed by five Trustees, and the first Board of Trustees shall be composed of the following persons, viz.: Jonathan Trotter, Elihu Townsend, Fichólas Dean, William Rider, and Emory Rider, who shall manage the affairs of this Company until the third Monday of January, A. D. 1849, and until others are elected in their stead.”
In the arrangement of their business under the by-laws, a manager and assistant were to be appointed, who should “have the *95 entire management of the manufacturing part of the business, under the direction of the President,” &e.
The plaintiffs,' Jonathan Trotter and. William Rider, were appointed, the former President and the latter Treasurer of the Company. Emory Rider was appointed Factory Manager and John Rider Assistant Factory Manager, and one Bellows was appointed Secretary.
In this state of the organization, the articles in question being held by the President and Treasurer, as assignees, and being at the Company’s manufactory at Harlem, it is shown that the Company had use for the machinery, &c., (constituting the articles referred to,) for the purposes of their manufacturing department. Emory Rider, the Managing Agent of the Company, (knowing that the property was fbr sale, expecting that the Company would buy it, and, indeed, supposing at the time that the Company had purchased it from the plaintiffs, he having proposed to one of the plaintiffs that the Company should do so,) took possession of the articles and used them in the manufacturing business of the Company—the articles being-such as are used in that business, and the Company having use therefor.
John Rider, the Assistant Factory Manager, was aware that the articles belonged to the plaintiffs as assignees of Goodyear & Ely. He was aware of the use thereof in the business of the Company. Whether the Secretary of the Company (Bellows) had any knowledge on the subject does not appear.
Three of the five Trustees of the Company under whose control and management it was, and their Assistant Factory Manager, knew the fact and assented to it, and although the other two Trustees are not shown to have been consulted, it is only just to presume that during the eight years the property remained in the use of the Company, they did their duty, so far, at least as to inform themselves on the subject, when nothing appears to have been clandestinely or fraudulently done.
Having thus had the beneficial use and enjoyment of the property by the owners’ consent; there being no evidence of any expectation on the part of any one that such use was gratuitously furnished without expectation of reward, there seems no good reason why the defendants should not pay the fair value of such use. On the contrary, it is obviously just that they should pay *96 such, value unless there is some principle of law which deprives the plaintiffs of the power to demand compensation.
We perceive no rule of law which prevents the agents of the Company acting in good faith, charged with the conduct of the manufacturing department, making a necessary and proper use of the machinery in question, for the purposes of the business, merely because it belongs at the time to some other officers or agents of the Company. Had the managing agent of the Company so taken and used the property of a person having no connection with the Company, with the owner’s consent, and such use had been actually known to and approved by several officers of the Company and acquiesced in by all, and had continued for several years, without dissent or objection, it would be rather late to raise the objection of want of power in such agent to bind the Company to pay a fair and reasonable compensation for such use.
How then does the fact that Trotter & Rider, the owners of the property, were at the time President and Treasurer of the defendants, affect the question?
In the first place it was not their sole act. The very person who, by express appointment of the Trustees under the by-laws, had the “entire management of the manufacturing business,” took the articles for use and used them for the Company, and the continued acquiescence of the Company for several years, so far as appears by any proofs given by the defendants, sufficiently indicates approval, unless they be assumed to have been grossly inattentive to their duties. So that in this aspect Emory Rider must either be taken to have acted in pursuance of authority sufficient to bind the Company; or if his powers did not extend to the use of machinery of a third person under an implied obligation to pay for such use, then the continued use and the enjoyment of the benefit thereof by the Company are sufficient to amount to a ratification.
But secondly. Viewing this transaction as the act of the President and Treasurer, in connection with the Managing Agent, the result is the same.' It may be conceded for the purpose of this present point, that Trotter or Trotter & Rider as assignees, could not contract with Trotter as President of the defendants, nor with Trotter & Rider as President and Treasurer of the defendants; upon the principle that no person can make a contract *97 with himself, or that an agent cannot bind his principal to a contract with himself, or that a trustee cannot bind the trust estate by a contract for the benefit of himself in his own right nor in any other capacity.
What follows? Not necessarily that, when he in good faith, in the proper discharge of his duty, parts with money or property which the purposes of the principal, or the exigencies of the trust estate require, such principal or such trust estate may have the use and benefit of such money or property without paying or allowing any compensation.
When an agent or trustee so acting makes a claim, it must undoubtedly appear that what was done was done in good faith, and for the benefit of the principal or of the trust estate. And where the nature of the transaction is such as to allow it, the principal or the cestui que trust has an option to disaffirm the transaction and restore the benefits derived therefrom. But moneys expended and property applied by the agent in the faithful discharge of his duty, and for purposes within his authority, must be paid for by the principal; and the claim of the agent to be paid therefor is as clear as his right to require for his services what they are reasonably worth, or as the right of a third person would be from whom the agent procured like property. It is true that the agent cannot by an express contract fix the price and terms, &c., with himself, and therefore all he could claim would be the fair value.
So here Trotter & Rider could not, on behalf of the Company, agree to pay Trotter & Rider a fixed sum for the use of the articles in question and bind the Company to pay that price, but if the articles were needed and were in good faith used for the benefit of the Company in the proper conduct of the business, we have no hesitation in saying that the Company was bound to make fair and reasonable compensation therefor.
The various questions of law urged upon our attention on the argument of the appeal, are chiefly in entire consistency with these views; the difference between our conclusions and the claim of the appellants lies chiefly in determining what rules of law are applicable to the facts proved and found.
It is doubtless true that a corporation cannot ratify an act of its agents which the corporation itself had no power to do. Nor an *98 act which it could only do in a particular manner, where that mode is not pursued. This was held by us in Brady v. The Mayor, &c. (2 Bosw. R., 178.)
But here we perceive no want of power in the Company to procure and .use any machinery necessary for the conduct of its manufacturing business, and, when so procured by its agents, to accept, approve, or ratify the act directly or by acquiescence.
It is true that the by-laws require that the agents enter all the business of the Company in its books, but their neglect to do so, (however it may subject the agents to censure or to damages if the Company suffer injury by the neglect,) does not make the act void.
. So the law will not imply-a contract where the corporation had no power to make an express contract to the same purport. (Brady v. The Mayor, &c., supra, and Peterson v. The Mayor, &c., 17 N. Y. R., 449.) But here no want of power in the corporation is shown, and the procurement and use of the property in question might be done by the agents of the corporation and might be approved or sanctioned in any of the modes in which a corporation may act in the exercise of its ordinary powers for the' purposes of its legitimate business.
The previous decision in this case at Greneral Term, (February 19, 1859,) sustains the. charge of the Judge on the trial in all respects which relate to the question of title to the property itself, and the circumstances under which the plaintiffs would be estopped, to claim title to the property.
The exception to so much of the charge as allows a recovery for the use of the property, (which exception seems to proceed on the idea that because the use commenced more than six years before suit brought there can be no recovery for the use during any subsequent years,) was not strenuously urged on the argument. We perceive nothing in this part of the charge of which the defendant can complain. If one has by the consent of the owner had the use of another’s property for ten years, no compensation being stipulated, certainly the statute of limitations, if it has barred the recovery of any part of the value oí the use, cannot affect the liability for any sum which has accrued within the six years. (Davis v. Gorton, adm., 16 N. Y. R., 255.) No part of a debt is barred by the statute which if a suit had been *99 brought six years earlier might not then have been collected, that is to say, which was not then payable.
The exceptions to the admission of evidence do not seem to us well taken.
The first is to the question put to the factory manager, whether, at the time the Company purchased from Rider & Brothers, he pointed out to the President the property held by him and Rider as assignees ?
This question was proper, as tending to show that that property was not, as the defendants now claim it to have been, included in the defendants’ purchase from Rider & Brothers. A similar observation may be made of the testimony of William Rider, that he knew what the Company bought of Rider & Brothers, and that that purchase did not include the property in question. This, also, went directly to one of the grounds of defense, and tended directly to establish the title of the plaintiffs to recover for the use of the property.
The objections taken to proof of the value of the use of the property are sufficiently disposed of by what has already been said. In the absence of an express contract fixing the price of the use, its fair and reasonable worth was the measure of the plaintiffs’ recovery.
An exception was also taken to the ruling by which the record of a former judgment between these parties was admitted in evidence. We find nothing in the appellants’ points in support of this exception. The record was competent evidence that although the defendants did not now claim to have purchased the property from the plaintiffs, the claim now in controversy was not a stale claim made after the lapse of many years under circumstances indicating that the plaintiffs were conscious either that the property was included in the sale of the machinery, &e., of Rider & Brothers, or that there never was any expectation on the part of either that the defendants should make any compensation for the property.
We think? the order denying a new trial was properly made, and that there was no error committed on the trial.
The j udgment, and the order denying a new trial, must both be affirmed.
Judgment and order affirmed, with costs.