ERASMUS M. DEANE *vs.* LYMAN D. HODGE, Assignee.

April 9, 1886.

**Contract to Pay Value of Property or Services, when Implied.**—Where the evidence fails to disclose an express agreement, the law may imply a contract from the circumstances or the acts of the parties; and where there is nothing from which a contrary intention or understanding is to be inferred, it is a just and reasonable presumption that he who has received the benefit of the services or property of another impliedly undei takes to make compensation therefor.

**Same—Rule applied to the Use of Patented Inventions.**—The right to use a patent-right or patented invention may be the subject of contract, express or implied, and *assumpsit* will lie upon an implied contract, to recover reasonable license fees or compensation for such use.

**Same—Use by Corporation of Patented Inventions of a Director.**—Where the owner of a patented invention was a director and officer of a corporation, and the latter appropriated and used such invention with his consent and acquiescence, *held*, that he was not necessarily precluded from recovering a reasonable compensation therefor by reason of his relationship to the company, but such relationship, with other circumstances, was for the jury to consider in determining the question whether the license to use the patent should be implied to be for or without compensation.

**Patent for Invention—Presumption as to Utility.**—A patent regularly issued is *prima facie* evidence of the utility and novelty of the device or invention covered by it.

**Same—Two Patents Partially Covering Same Improvements.**—And where two patents were issued to the same party for improvements in a machine, and an action was brought to recover reasonable license fees for

the use of both, *held*, that a recovery might be had for the use of the second in so far as it was found to contain anything new and practically useful in addition to the first.

**Same—Licensee Estopped to Deny Validity of Patent.**—A licensee in such case, who has enjoyed the undisturbed use of both patents, is not permitted to raise the question of the validity of the second patent, as between the licenser and the United States, on the ground that it includes claims and specifications also covered by the first patent.

**Implied Contract—Use of Patented Invention—Measure of Damages.** The proper measure of damages in such cases is a reasonable royalty per machine; and where the invention has been used by the licensee only, and there is no established royalty, general evidence, including the evidence of experts, tending to show the nature, utility, and value of the use of the patented invention, is admissible from the necessity of the case, to be submitted to the jury under proper instructions by the court.

The St. Paul Harvester Works, (a corporation,) becoming insolvent, made an assignment to Lyman D. Hodge. The plaintiff presented claims against the insolvent, amounting to $39,437, for royalty and the value of the use of two patented inventions and also for services rendered. The claims were disallowed by the assignee, and the plaintiff appealed to the district court for Ramsey county, where the cause was tried before *Wilkin*, J., and a jury, and the plaintiff had a verdict of $19,894. The assignee appeals from an order refusing a new trial.

*H. J. Horn*, for appellant.

*C. K. Davis*, for respondent.

VANDERBURGH, J. The plaintiff is the patentee of certain improved grain elevators, which were adopted by the defendant's assignors, and manufactured and sold by them in connection with a large number of their harvesting-machines, and which it is claimed were found to be necessary to the successful operation of such machines, and greatly increased their salability and value in the market; and he claims to be entitled to collect and receive of the defendant a reasonable sum or license fee for the use of each of such patented inventions, which is alleged to be five dollars for each machine. He claims under two patents issued to him, the one dated April 27, 1880, and the other dated July 19, 1881, the benefits of each of which it is alleged have since

been enjoyed by the corporation. He seeks to recover compensation for the use of the first patented invention upon and in connection with 4,661 of their harvesters, and for the use of the second upon 2,816 thereof. Plaintiff also sues for compensation for special services rendered in behalf of the corporation in negotiating and contracting for the "Appleby Binder Shop-right," and in securing the collection of royalties on patents owned by the corporation.

1. In respect to the cause of action last mentioned, we think the evidence in plaintiff's behalf fully sustains his right of recovery and the amount allowed by the jury, and this branch of the case may therefore be dismissed without further consideration.

2. It is admitted that the use of the patents by the harvester company was not properly an infringement. It was not tortious, but with the consent of the plaintiff. It also appears that the plaintiff, during the period of such use, was a director of the company, and a part of the time its president, and that after he ceased to be such officer he was, in November, 1881, appointed patent director, for which a compensation was to be fixed. He also had a salary while president. It does not appear, however, that any compensation was ever fixed or allowed him, as patent director, or that his salary as president was, or was intended to be, compensation for special services in making inventions or improvements, or securing patents. We see nothing in the case necessarily inconsistent with his individual or private right to make such inventions, and secure a patent therefor as his own peculiar property, and to exclude the use thereof by the company without his consent, if he elected to do so. In *McClurg* v. *Kingsland*, 1 How. 202, relied on by defendant's counsel, the plaintiff's action was for an infringement. The patentee was a laborer employed by the defendants, and while in their employ was engaged in making experiments, which resulted successfully, and on account of which his wages were increased. The circumstances were held to be such as to authorize the jury to presume a license. And to the same effect are *Wilkens* v. *Spafford*, 3 Ban. & A. Pat. Cas. 274; *Chabot* v. *American Button-hole Co.*, 9 Phila. 378. It is evident, however, if in any case a recovery can be had for a use not tortious, and where no compensation is expressly stipulated for, that the question

of the patentee's right to recover, in cases where his invention has been used by another with his consent or acquiescence, must be determined upon the facts of each particular case.

The circumstances under which the plaintiff's invention was applied and used, and his relation to the company, were accordingly submitted to the jury by the trial court for their consideration upon the question whether there was an implied understanding that such use was to be for a compensation. And at this point it may be well to consider the exception, strongly insisted on and elaborately argued by the counsel for the defendant, to the following legal proposition laid down by the court in the course of its charge to the jury: "And here comes in a very important question in this case, and that is, was there an implied contract here with the Harvester Works to pay a reasonable compensation for the use of these inventions? There is no claim here that there was any express agreement to pay a compensation for that use. It is claimed, however, that there was an implied contract. Where a party has availed himself of the services or used valuable property of another, such as an invention, the law, in the interest of justice, will imply an agreement to pay a reasonable compensation, unless the circumstances attending such use are of such a character as to justify the conclusion that it was the understanding of the parties that the use was to be gratuitous. A man has a right to render a voluntary service, or give a right to use his property, to another, without remuneration, and if he does, he cannot afterwards recover for such services or use of his property; but it does not follow that his mere neglect to demand a specific agreement for compensation, or to forbid the use of his property, necessarily deprives him of his right to a reasonable remuneration. The circumstances, however, may be such as to show that the understanding of the parties was that the services rendered, or the use of the property, was to be without compensation; and in that case the party cannot recover. It is not necessary that there should be any express agreement to that effect; that there should be any express statement in words that they might use it without compensation. The attendant circumstances may be such as to show that such was the understanding of the parties, to the satisfaction of the jury."

In the same connection may be considered the exception of defendant to the refusal of the court to charge, at his request, "that if there was no infringement made, on the part of the company, of the patents in question, the plaintiff cannot recover any royalty or compensation by reason of the St. Paul Harvester Works having used, made, or sold any articles or machines patented by plaintiff, without proving to the satisfaction of the jury that the company agreed to pay said royalty or compensation." The defendant's ninth and tenth requests, bearing on the same subject, present no question not embraced in that just quoted, unless covered by the above general charge of the court.

Where the evidence fails to disclose an express agreement or understanding, the law may imply a contract from the circumstances or the acts of the parties; and where there is nothing from which a contrary intention or understanding is to be inferred, it is a just and reasonable presumption that he who has received the benefit of the services or property of another impliedly undertakes to make compensation therefor. "Implied contracts are such as reason and justice dictate, and which, therefore, the law presumes that every man has contracted to perform." 3 Bl. Comm. *158; 2 Kent, Comm. *450; Bouv. Law Dict. "Obligations, Implied;" 2 Greenl. Ev. § 108.

A patent is a mere monopoly or exclusive right to an invention, not existing at the common law, but by special grant from the government. The defendant therefore contends that, unless there is an express contract defining the terms of use by a licensee, the patentee is confined to the remedy provided by the patent law for an infringement, by an action on the case for damages, and that there can be no such thing as an implied license for compensation.

There is very little authority on the subject, as the question of implied license has usually arisen in actions for infringement, and as such is for a tortious use or piracy, and the existence of a license, express or implied, is always a sufficient defence. But an action upon a contract, express or implied, for compensation for the use of a patented invention, or for license fees, is not one arising under the patent laws; and, notwithstanding the nature of the subject, common-law principles are applicable, as in other cases. Thus, in *McClurg* v.

*Kingsland, supra,* the court held that, if the facts were as testified, "they would fully justify the presumption of a license, a special privilege, or grant to the defendants to use the invention,      *      *      * and show such a consideration as would support an express license or grant, or *call for the presumption of one, to meet the justice of the case,* by exempting them from liability; having equal effect with a license, and giving the defendants *a right to the continued use of the invention."* Here is recognized the principle that, from the circumstances and to meet the justice of the case, a license or grant for a continued use of the invention would be implied. The right to use and profit by a patented invention may, then, be the subject of contract; and if the evidence of an express contract is wanting, it may be implied, as in other cases, and for the same reasons; and if *assumpsit* will lie upon express contract to recover reasonable license fees or compensation, it may also be maintained upon implied contract, though, from the nature of the subject, and the circumstances of any particular case, the question may be involved and difficult of solution. See Walk. Pat. § 312; *De Witt* v. *Elmira Nobles Mfg. Co.,* 66 N. Y. 459. In *McKeever* v. *U. S.,* 14 Ct. Cl. 396, it was held that where the patentee had allowed the defendant to proceed in the manufacture and use of a patented invention or article "without the formality of an express license, or the precaution of an express consideration, the omission did not change the character of the transaction, for the law supplies, by implication, a price in giving what the license was reasonably worth." The case was well considered, and was afterwards affirmed by the supreme court of the United States. Walk. Pat. § 391.

Recurring again to the question of the relationship of the plaintiff to the defendant as president or director at the time, as affecting his cause of action, it was held in *Rogers* v. *Hastings & Dakota Ry. Co.,* 22 Minn. 25, that the defendant corporation, of which the plaintiff was a director, might be held liable upon an implied *assumpsit* to pay the reasonable value of services rendered for defendant outside of his duties as director. He could not, as director, aid by his vote in fixing the amount of such compensation, for in that case there would be a conflict of interests inconsistent with his official duty. *Jones* v. *Morrison,* 31 Minn. 140, 148, (16 N. W. Rep. 854.) But the rule is not,

as we understand it, to be carried so far as to prevent the corporation from availing itself of the services or property of an officer of the company, "if necessary for its convenience or profit, as in the case of other persons, under circumstances implying a contract to pay a reasonable compensation therefor." *Rider* v. *Union India Rubber Co.*, 5 Bosw. 85, 97. All such dealings are, of course, looked upon with jealousy by the courts, and the fact of such official relationship, and the interest of the officer in the affairs and property of the corporation, would figure prominently in determining the question of fact whether or not a contract for a compensation is to be implied. *Gardner* v. *Butler*, 30 N. J. Eq. 702.

Upon the directors was imposed the duty and authority, which was exercised by them, of determining the character and number of the machines to be manufactured. The improvement was appropriated and used by them, or under their direction, on behalf of the company; and the continued acquiescence of the corporation for several years sufficiently indicates its approval. *Rider* v. *Union India Rubber Co.*, 5 Bosw. 85, 96.

3. The patents were of themselves *prima facie* evidence of the utility and novelty of the inventions; and the evidence in the case raises no question as to plaintiff's right to a patent. The answer denies knowledge or information sufficient to form a belief as to the novelty and utility of the patents, and the number of machines in connection with which they were used. The objection is now urged by the defendant that the second patent appears to be for the same invention as the first, and covers no new improvement. In respect to the second patent nothing was claimed for it on the trial in addition to the first, except an improvement therein in the single particular of a "link-belt," which the witness Levalley, who was superintendent of the defendant's works, and testified as an expert, described as "a link-belt that connects the power from the initial crank-head to the upper drum or pulley." Upon the evidence of the witnesses as to the use of and value of this device, which was suffered to go to the jury in connection with the models, we are not prepared to say that the trial court was not right in submitting to the jury the question as to the utility of the alleged improvement, and whether there was anything of prac-

tical value in it, in addition to the first patent. And the court instructed the jury, if there was not, the plaintiff would not be entitled to anything for its use. If the particular device or improvement claimed to be a new invention is in fact of practical value and utility over any other, this is in itself proper to be considered on the question of novelty. 2 Greenl. Ev. § 494.

No notice is given in the answer of any intention to contest the validity of either patent upon any specific ground, and the denials simply put the plaintiff to his *prima facie* proof of their utility and novelty, and the point was not made on the trial that either patent was legally invalid on account of double claims, but only that the second patent contained nothing not included in the first. And we think the better opinion is that in an action of this kind, where the licensee has enjoyed the use of a patent under a contract with the patentee, the former is not permitted to raise questions as to the validity of the patent, as between the patentee and the United States, where such licensee has not been disturbed in the enjoyment of the same. If the defendants are found to be using the same under an implied agreement for compensation, the plaintiff allowing them the exclusive use, good faith would seem to require that they should have notified him of their renunciation of the license, and a denial of his claims, before repudiating their obligations under it. *Marston* v. *Swett*, 66 N. Y. 206, 212; *Marsh* v. *Dodge*, 4 Hun, 281; Walk. Pat. §§ 177, 307.

4. There was evidence sufficient to warrant the jury in finding an implied license for compensation. It is not necessary to refer to it in detail. It is sufficient to say that the evidence tended to show that the patents were the property of the plaintiff, and that they were adopted and used by the company; that the directors had notice of the invention, and ordered the required number of machines to be built with it, and that none were subsequently made without it; that it was advertised in their circulars and engravings as a part of their machines; that they were allowed the exclusive use of it by plaintiff; that it proved to be of great value, and increased the sales and profits of the business, while the expense of adding the improvement to each harvester was trifling; that the machines were made under

the direction of the superintendent of the works, in pursuance of the order of the directors; and that he, the plaintiff, intended to reserve the right to charge a license fee or compensation for the use of the improvement. He was not necessarily concluded by the fact that the model, which was inexpensive, was made by defendant's workmen, and that the fees of the patent attorney for services in procuring the patent ($65) were advanced by the company, or by the fact that he did not in the outset give notice of his intention to claim royalty. The plaintiff in his evidence denies that he consented to the use of the patent without charge; and the defendant does not seriously question the plaintiff's ownership of the patents, but insists that a license for their use, without charge, is to be implied, under the circumstances, from the relationship of the plaintiff to the corporation as an officer, his acquiescence and delay in presenting his claims, and his interest in the success and business of the company as a stockholder and officer. All these matters were, however, carefully and impartially submitted to the jury by the court in its charge, and the correctness of the finding cannot be reviewed here.

5. Upon the question of damages it is undoubtedly true, as defendant contends, that the proper rule in such cases is a reasonable royalty for each machine. This was so charged by the court. In this case there was no established royalty. The patents were used solely by the defendants. They have never been put upon the market. Hence other evidence must necessarily be resorted to. The plaintiff did not claim, as the basis of his damages, the profit which the company may have derived by reason of the improvement, but a reasonable fee for the use thereof for each machine. In order to ascertain what would be a reasonable royalty in such a case the plaintiff is compelled to resort to general evidence, and the evidence of experts, as the best and only evidence which the nature of the case will admit of. *Burger* v. *Northern Pac. R. Co.*, 22 Minn. 343; *McKeever* v. *U. S., supra.* Accordingly, evidence was admitted showing the nature, operation, utility, and value of the improvement, and also the testimony of experts, on both sides, to the same points, the evidence on the part of the defendant tending to show that it was of no value, and the same was submitted to the jury under proper instructions.

from the court as to the proper measure of damages in case plaintiff should be found to be entitled to recover.

Order affirmed.