THOMAS MACKELLAR *vs.* ANCHOR MFG. Co. *et al.*

Argued Jan. 20, 1892. Decided March 9, 1892.

**Equities of Creditors of an Agent as against Creditors of the Principal.**—Where a manufacturing company domiciled in another state entered into a contract with an agent for the establishment of a branch of its business in this state, under which he carried on the business in his own name, with the knowledge and consent of the company, and under which he contracted a large amount of indebtedness, and thereupon made an assignment for the benefit of his creditors, *held*, that a creditor of the company was not entitled to a preference over the creditors of such agent by reason of the fact that moneys received from the company had been used in his business, or in the purchase of the assigned property, before the indebtedness to such creditor had accrued.

Appeal by plaintiff, Thomas Mackellar, from an order of the district court of Hennepin county, *Lochren,* J., made September 12, 1891, refusing a new trial.

The plaintiff recovered a judgment on July 9, 1890, in the district court, Hennepin county, against the Anchor Manufacturing Company, of Detroit, Mich., for $16,544.06, and caused a writ of execution to be issued thereon. This writ was returned wholly unsatisfied. Thereupon plaintiff began this action against the Anchor Manufacturing Company, Charles E. Cottrell, and Samuel A. Booth to obtain payment of his judgment out of certain real estate which Levi M. Stewart had on November 1, 1887, leased to Cottrell for one hundred years, and on which Cottrell had built cooper shops at an expense of over $20,000. Cottrell was one of the directors of the Anchor Manufacturing Company when the lease was obtained and shops built, and it furnished the money therefor under the circumstances and contract stated in the opinion. The Anchor Manufacturing Company and Cottrell both became insolvent, and on March 27, 1890, Cottrell made an assignment of his property to the defendant Booth in trust for his creditors. This assignment was before this court in *Mackellar* v. *Pillsbury,* ante, p. 396, (51 N. W. Rep. 222.) The judge before whom this action was tried said:

"This contract between Cottrell and the Anchor Manufacturing Company was agreed to at a meeting of the directors. In its terms, it was really the establishment by that company of a business of their own out here in the name of Mr. Cottrell. That seems to have been agreed to by the directors, and the details of how that was carried on was left apparently to its president; at least, it was managed by the managing officers of the company, mainly by Mr. Matulath. Everything that was done here seems to have been done subject to the direction of the managing officers of the company. They were applied to with reference to what building should be put up, how the lease should be taken, and were informed of every detail as a principal naturally would be by his agent; and the only question in the case is whether, having established this business here in the name of Mr. Cottrell, and permitted him to go on and carry it out apparently as his own business, whether the creditors of that business have not a superior equity to the Anchor Manufacturing Company, which placed this business on foot here, and permitted it to be carried on in that way, and an equity superior to the creditors of the Anchor Manufacturing Company. This is an action in equity, and it seems to me that in equity the creditors of Cottrell would have a preference over the creditors of the Anchor Manufacturing Company, and the assignee represents them."

*Emery, Hall & Fletcher*, for appellant.

It is the contention of the appellant that between June, 1887, and April, 1890, Charles E. Cottrell, then a director and the treasurer of the Anchor Manufacturing Company, in pursuance of a fraudulent combination with Matulath, the president, and C. G. Robinson, the secretary, of that company, and in violation of his and their duties as such officers, used the company's money to erect a plant in Minneapolis, the title to which was taken in the name of C. E. Cottrell. The Anchor Manufacturing Company never had any knowledge of such an illegal diversion of its funds, and never gave its consent thereto. Appellant also urgently contends that even if the directors of the Anchor Manufacturing Company had knowledge of the illegal diversion of its funds, and consented thereto, as against the corporation itself, Cottrell being a director and its treasurer, he

was an alienee, who, in violation of his trust as a director, purchased the lands so conveyed with moneys belonging to the Anchor Manufacturing Company. Such knowledge by the officers of the corporation, and their consent to the spoliation of the company whose interests they were bound to protect, was not the knowledge or consent of the corporation, within the meaning of the statute. Under familiar principles of equity, this property was impressed with a trust in favor of the Anchor Manufacturing Company, which a court of equity will enforce. It was property in which Cottrell had no interest, and did not pass to the respondent Booth by Cottrell's assignment for the benefit of his creditors. 1878 G. S. ch. 43, §§ 7, 8, 9.

Such a trust results when it appears that property was taken in the name of Cottrell without the knowledge or consent of the corporation. The question then arises, how is the knowledge of a corporation shown, or its consent given? One thing is certain, that the president, secretary, and one of the directors, who are busily engaged in abstracting the funds of a corporation, cannot give the consent of the corporation to such acts. Neither is the knowledge of the guilty associates of such directors the knowledge of the company. *Ryan* v. *Leavenworth, A. & N. W. Ry. Co.,* 21 Kan. 365; *Bank* v. *Drake,* 29 Kan. 322; *Hazard* v. *Durant,* 11 R. I. 196; *Currie* v. *School Dist.,* 35 Minn. 163; *King* v. *Remington,* 36 Minn. 15; *Foote* v. *Bryant,* 47 N. Y. 544.

The buildings and leasehold, being held by Cottrell in trust for the Anchor Manufacturing Company, did not pass to his assignee for the benefit of creditors. *Ludwig* v. *Highley,* 5 Pa. St. 132; *Collins* v. *Houston,* 138 Pa. St. 481; Burrill, Assignm. § 391; *Mann* v. *Flower,* 25 Minn. 500; *Lesher* v. *Getman,* 28 Minn. 93.

The decision of the district court was based simply on the assumption that the equities in favor of the creditors of Cottrell were superior to those of the creditors of the Anchor Manufacturing Company. While it might be held that, as between the Anchor Manufacturing Company and the creditors of Cottrell, the equities of the latter were superior, on account of some supposed estoppel arising against the former, no such estoppel exists against the creditors of the Anchor Manufacturing Company. The plaintiff has been guilty

of no negligence, nor has he in any way misled the creditors of Cottrell. *In re Long,* 3 N. B. R. 66, quarto.

*Ripley, Brennan & Booth,* for respondent Booth.

In the case at bar, the property transferred to Cottrell composed a very small portion of the property of the Anchor Manufacturing Company, and, on the theory that it remained the property of the Anchor Manufacturing Company, was set aside as a special fund and inducement to Cottrell's present creditors to extend credit to him, without either fraud or detriment to the Anchor Manufacturing Company, but, on the contrary, it largely increased its facilities for borrowing money. Such a fund will, in equity, be appropriated to the satisfaction of the creditors who were thereby induced to make advances to Cottrell on the faith thereof, and only after the satisfaction of their claims can any balance be claimed by the Anchor Manufacturing Company or its creditors.

VANDERBURGH, J. The Anchor Manufacturing Company, a corporation engaged in the manufacture and sale of barrels and barrel stuff at Detroit, Mich., had, prior to June, 1887, as a part of its business, been engaged in furnishing goods in their line to dealers and manufacturers in the city of Minneapolis. At or about the date referred to it was determined by that company to establish a separate department of their business there, and place it in the hands and control of a resident manager. Accordingly a contract was made between the company and Charles E. Cottrell, one of the defendants, dated June 29, 1887, containing the following provisions: "Whereas, said Anchor Manufacturing Company is desirous of selling barrel material at Minneapolis to the best advantage, and the said Cottrell, either for himself or for some firm that he may organize hereafter, desires to handle the same, upon the terms hereinafter named, therefore said Anchor Manufacturing Company does hereby sell and assign to said Charles E. Cottrell all the barrel material and other property connected with the business at Minneapolis, and will ship to said Cottrell, upon his order, further material, from time to time, to the extent that may from time to time be agreed upon. Said Cottrell on his part agrees that for all shipments so made and for said ($2,500.00) said Anchor Manufacturing Company may draw

upon him drafts payable at such times as may be expedient, and drafts drawn for material hereafter shipped shall be with bill of lading attached. In case the Anchor Manufacturing Company should, in addition to said drafts, make other drafts for accommodation purposes, the said Anchor Manufacturing Company, if said Cottrell accepts the same, agrees to see that said drafts are protected, and means provided for the payment thereof. And in case material is not sold so as to take up drafts given for the shipments aforesaid, the Anchor Manufacturing Company will also protect the same. The Anchor Manufacturing Company hereby guaranties a profit on the business that shall equal a salary of one hundred dollars per month, and the necessary hotel, boarding, and traveling expenses; and it shall be at the option of either party, until final settlement of the business herein referred to, to make that the measure of profit obtained by said Cottrell from the business. Prices for barrel material shall be as may be agreed, from time to time, or, in the absence of specific agreement, at the prices directed by the Anchor Manufacturing Company. It agrees further that it will hereafter repurchase from said Cottrell any of the material that he may have on hand at such price as shall protect him and yield him the profit above named. This agreement to continue until written notice by either party terminating the same."

In pursuance of this agreement, Cottrell immediately undertook the management of the business at Minneapolis, under the name of Chas. E. Cottrell & Co., and so conducted it thereafter with the knowledge and consent of the Anchor Company, whose officers were kept advised of the nature of his business. And in the course of the business, in connection with that company, and for and in behalf of that company, as well as for expenditures by him made in his department, he had at the time of his assignment in controversy here contracted a large indebtedness in the name of C. E. Cottrell & Co., amounting to more than $90,000. During all that time he was acting under the advice of the officers of the Anchor Company in disposing of its goods and raising money, in pursuance of the contract, accounted for the proceeds, reported to them regularly, made drafts upon them, and accepted their drafts to a large amount. On the

27th day of March, 1890, Cottrell made the assignment referred to for the benefit of his creditors. The assigned property consisted chiefly of a leasehold interest in land upon which he had erected in the year 1887. costly buildings for the manufacture of barrels, and the machinery and fixtures appertaining thereto. The shop had been operated by Cottrell in connection with the business transacted. for the Anchor Company, and the expense of erecting, furnishing, and conducting it had been paid out of funds received in the course of that business. The expenditure was made in 1887, by and with the advice of the officers of the company. It was not authorized by the contract, nor ever formally approved by the directors of the company; but there is no evidence of any fraud or concealment in the matter on Cottrell's part. The funds of the company, derived in the usual course of business, were applied to the payment of the cost and running expenses of the shops; and all this was reported to the company, and was treated by all concerned as an extension of the business in Cottrell's charge. Knowledge of the state of the business between the company and Cottrell is fairly attributable to the company, and its long-continued acquiescence must be deemed as equivalent to consent and approval on the part of the corporation. *Deane* v. *Hodge,* 35 Minn. 146, 152, (27 N. W. Rep. 917.) And, as against third parties extending credit to Cottrell, the Anchor Company, which was not known in the transactions with his creditors, will not now be permitted to set up a claim that he is a trustee *ex maleficio* for the company as respects the assigned property, which consists chiefly of the shops and fixtures above referred to. And Cottrell testified on the trial (and his evidence was not contradicted or questioned) that during all the time covered by his correspondence, extending from the commencement of the business to the assignment, there was no time when the remittances to him for the buildings ever balanced the account between him and the company, or his acceptances held by the company; and these acceptances made by him, held and negotiated by the company, and not paid by it, constitute the indebtedness to secure which he made the assignment; and that his liabilities on account of the Anchor Company far exceeded the sums advanced by the latter company for the erection of the buildings. The plain-

tiff is the holder of a claim against the Anchor Company, now reduced to judgment, which accrued in 1890, and he brings this action to enforce the lien of his judgment against the property assigned to the defendant Booth by Cottrell on the ground that he is a judgment creditor of the Anchor Company, and because the funds of that company were used in erecting the buildings. The action was dismissed by the court at the hearing for want of equity, and we think rightly, on the bare statement of the facts, the substance of which is stated above. No trust is raised in his favor under the statute, for his debt did not accrue till long after the money was advanced, and no valid reasons are suggested why, on any ground, he should be entitled to the relief asked.

Order affirmed.

(Opinion published 51 N. W. Rep. 616.)