WILLIAM HUTTON ET AL., APPELLEES, V. CITY OF OMAHA, APPELLANT.

FILED MARCH 22, 1924.   No. 22716.

Patents: ROYALTIES: ESTOPPEL. In an action by employees of a city for royalties for the use of a patented invention, *held*, that under the facts set forth in the opinion no implied promise to pay royalties existed, and plaintiffs were estopped from claiming them.

APPEAL from the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Reversed, with directions.*

*Dana B. Van Dusen* and *John F. Moriarty*, for appellant.

*Weaver & Giller*, contra.

Heard before MORRISSEY, C. J., ROSE, GOOD and DAY, JJ., REDICK, District Judge.

REDICK, District Judge.

This action was brought March 23, 1921, by appellees Hutton and Jorgensen against the appellant, City of Omaha, to recover royalties claimed to be due for the use by defendant of a certain device for a sewer inlet upon which appellees have a patent of the United States which was applied for May 1, 1917, and granted July 29, 1919. The

city admits the use of the device, but denies any liability
for royalties on the ground of an implied license of the
patentees to use the same without compensation. There
was a verdict and judgment for the plaintiff, and defend-
ant appeals.

Plaintiff Hutton was in the employ of the city, working
in the city sewer department for 34 years, the last 20 years
being in charge of it, and left the city's employ September
1, 1919. Jorgensen, the other plaintiff, was in the employ
of the city in the sewer department from 1890 until May
6, 1921, the last 5 or 6 years having charge of the flush-
tanks, water-troughs and drinking-fountains. Prior to
1915 the city had been using cast-iron sewer inlets, with
the exception of three, reference to which will be made
later. In the fall of 1915 Walter Jardine, city commission-
er in charge of sewers, received many complaints of dis-
agreeable odors emitted through the sewer intakes, and
called in Mr. Hutton for the purpose of discussing a reme-
dy. He inquired of Hutton if it was not possible to make
the intakes of concrete, and Hutton replied they already
had three concrete intakes which had been installed some
two years, with the result that Jardine ordered Hutton
to have some of the concrete intakes made up, reinforcing
them so they would be stronger than the others, and in
such manner that they could be connected with a trap to
prevent the escape of stench from the sewers. Wooden
frames were thereupon constructed from city materials in
the sewer yard, and substantially after the pattern of the
three concrete inlets already installed, and a number of
inlets were made from city materials, reinforced and pro-
vided with trap connection. These inlets proved a success,
and were very much cheaper than those made of cast iron
and were more easily removed when required, and from
that time forward have been used with the assent of plain-
tiffs and installed under the supervision of plaintiff Hutton
as superintendent in charge of the sewers until he left the
employ of the city, and are in use up until the present time.
Plaintiffs collaborated in devising a concrete inlet to take

the place of cast iron from 1913 to date of application for patent, and are entitled to the benefit of their invention, and the ownership of the patent, beyond all question. This is not denied by the city; but it is contended that, by reason of the facts and circumstances above mentioned and those about to be referred to, the plaintiffs are estopped from claiming royalties from the city, which has an implied license to use the device without compensation. The three inlets installed prior to 1915 were constructed of city materials by city employees; likewise the forms, experimental intakes and others subsequently installed. Prior to the application for patent a drawing was made by the city engineer representing the concrete intakes, blue-prints from which were used as a basis for the application for patent. No suggestion of a claim against the city for royalties was made until after September 1, 1919, when Hutton left the defendant's employment, although about 1,000 had been installed at that time. Early in September, 1919, a claim was presented to the bookkeeper in the city engineer's office, but was never presented to the city commissioners. From that time on the city continued to use the inlets. and in March, 1921, this suit was commenced. There is no serious dispute about the facts, and we are clearly of the opinion that the law would not imply a promise to pay royalties under the circumstances stated, but, on the other hand, that the only conclusion to be drawn therefrom is an implied license without compensation, and that defendant's motion to so instruct the jury should have been sustained.

In various forms the question of the right of an employee to demand compensation from his employer for the use of inventions patented by the employee has received consideration of the federal courts in numerous cases and has almost universally been denied. *McClurg v. Kingsland,* 1 How. (U. S.) *202; *Solomons v. United States,* 137 U. S. 342; *Lane & Bodley Co. v. Locke,* 150 U. S. 193; *Gill v. United States,* 160 U. S. 426. In *Solomons* case the rule was announced:

"When a person in the employ of another in a certain line of work devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employees to develop and put into practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court, trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, and the assistance of the coemployees of his employer, as to have given to such employer an irrevocable license to use such invention."

The plaintiffs attempt to draw a distinction between cases where the materials and assistance of the master are supplied merely in the construction of the device, and where they enter into the processes by which the idea constituting the invention is developed. They say: "The idea of this kind of an intake was thought out by plaintiffs and perfected by them without in any way or manner interfering with their work for the city and without taking up any of the city's time for that purpose. After they had thought out and devised and invented this concrete sewer intake and made a sketch of it, all that remained to be done was to construct this wooden form and then proceed with the making of the three intakes that were first used in the city streets." But the invention was of no value until it had been put into practicable form, for which purpose the materials and services of other employees of the defendant were used, and the adoption by the city of that form of intake demonstrated its practicability, and established, so to speak, a market for the invention of which the plaintiffs received the advantage in the way of royalties upon sales made by the defendant to other cities and individuals. It seems quite in consonance with the inference of an implied license that plaintiffs were quite content to permit defendant the free use of their invention in the expectation that its adoption by a great metropolitan city would give the device such standing in the com-

mercial world as would result in great profits to the inventors; but whatever their motive, they could not encourage the city to assist in the construction of the device and use the same, make detail drawings for use in obtaining the patent, assent thereafter to their use in large quantities without notice of any intention to claim royalties therefor, without being estopped from making such claim. An interesting case on this view of the matter is *Ford Motor Co. v. K. W. Ignition Co.*, 278 Fed. 373, in which the plaintiff was not an employee.

Plaintiffs cite *Ft. Wayne, C. & L. R. Co. v. Haberkorn*, 15 Ind. App. 479, but in that case the court, while approving federal cases above cited, distinguishes them by saying: "The principles asserted in these cases cannot govern here, for the reason that none of the employer's material or labor entered into the discovery or perfection of these inventions, nor was anything of the employer's devoted to the construction of the appliances, until after the invention had been put into definite form and carried to completion, and a patent either issued or applied for."

If plaintiffs independently of their employment had constructed their device and the same had been adopted and used by the city, the case just cited would have some application. The same remark applies to the case of *United States v. Société*, 224 U. S. 309, where a completed invention by a French officer relating to military ordnance was presented to and adopted by the United States, the supreme court holding that an implied contract to pay a reasonable royalty for the use of the patented invention existed on general principles governing contracts. The case did not involve the rights between employer and employee. Plaintiffs also cite *Deane v. Hodge*, 35 Minn. 146, in which it was held that, where a director and officer of a corporation was the owner of a patented invention which the corporation used with his consent and acquiescence, the question was for the jury whether a license without compensation would be implied, notwithstanding "the fact that the model, which was inexpensive, was made by defendant's

workmen, and that the fees of the patent attorney for services in procuring the patent were advanced by the company, or by the fact that he did not in the outset give notice of his intention to claim royalty." The case undoubtedly makes for plaintiff's contention, but it seems to us the case is distinguishable by reason of the fact that the device was not used until after the patent issued, and the further fact that the plaintiff's connection with the company was not such as to charge him with any duty respecting the particular subject covered by the invention; that is, his duties were not strictly connected with the application to the use of the company of the particular device to which the invention related; they were such as devolve upon directors and officers of a corporation. In *McKeever v. United States*, 14 Ct. Cl. 396, also cited, an army officer invented a cartridge box which was adopted by the United States; there was no question of estoppel nor use of defendant's time or materials. *Miller v. Kelley*, 18 App. D. C. 163, was an interference case and has no application; what was said *arguendo* in the opinion supports the views herein expressed.

While the question is one ordinarily to be presented to the jury, we are of the opinion that only one inference is justified from the evidence. In view of our conclusion, other questions presented by the briefs need not be discussed. The judgment is reversed and the cause is remanded, with directions to dismiss.

REVERSED.