A. R. GUILDER

*vs.*

THE TOWN OF OTSEGO.

Chapter 100, Special Laws 1870, providing for the building of a bridge across Crow river at the contributory expense, in specified proportions, of the counties of Hennepin and Wright, and the towns of Dayton and Otsego, is not in violation of sections 1, 2, 3, 4, art. 9, (State Constitution,) which require equality of taxation upon a cash valuation of property, — or of section 5, art. 11, (State Constitution,) which provides that " any county and township organization shall have such powers of local taxation as may be prescribed by law."

Section 4 of chapter 100, Special Laws 1870, made a certain proportion of the expense of constructing the bridge aforesaid a charge upon defendant, by which the same was to be paid.

Section 6 made it the duty of the town supervisors of the towns aforesaid upon proof furnished of the completion and acceptance of the bridge as provided by law, " to cause to be issued upon the town treasurer of their respective towns, the orders of their towns in favor of the proper person for the amount due from their respective towns on said bridge according to the provisions of this act, and the town treasurer of the proper town shall pay said orders out of any money in the town treasury

Guilder v. The Town of Otsego.

belonging to the road and bridge fund not otherwise appropriated." *Held*, That the law having been so far complied with as respected the construction and acceptance of the bridge as to fix a liability upon defendant, such liability is an absolute indebtedness, upon which, after a refusal upon defendant's part to issue town orders upon proper demand, an action may be maintained as upon any other absolute indebtedness.

This is an appeal by the plaintiff from an order of the district court for Hennepin county sustaining a demurrer to the complaint. The case is fully stated in the opinion.

COOLEY & LOWRY, for Appellant.

I. ATWATER, for Respondent.

*By the Court.*—BERRY, J.—Chapter 100, Sp. Laws 1870, appoints three persons, residents of Hennepin and Wright counties, bridge commissioners " for the purpose of contracting for and superintending the rebuilding of the bridge across Crow river, near its mouth, between the town of Dayton, in the county of Hennepin, and the town of Otsego, in the county of Wright." The commissioners are to contract for and generally superintend the construction of the bridge, the total cost of which is not to exceed three thousand dollars. The contract is to be in writing, and· copies of the same are to be filed with the auditors of said counties, and the town clerks of said towns, and various minor directions are given to regulate and govern the action of the commissioners. The law further provides that said bridge when completed shall be examined by said commissioners, and if completed in accordance with the terms of the contract or contracts under which the same may be built, they shall accept it by their written. acceptance, a copy of which shall be filed with the county auditors and town clerks aforesaid, together with a detailed statement of the total cost of the construction.

Section 4, enacts that three-tenths of the cost of the bridge " shall be a charge upon and be paid by " each of the counties of Hennepin and Wright respectively, and two-tenths " shall be a charge upon and be paid by " each of the towns of Dayton and Otsego respectively. By section 6, it is made " the duty of the town supervisors of the said towns of Dayton and Otsego, upon proof furnished of the completion and acceptance of said bridge as herein provided, to cause to be issued upon the town treasurer of their respective towns, the orders of their towns in favor of the proper person for the amount due from their respective towns on said bridge according to the provisions of this act, and the town treasurer of the proper town shall pay said orders out of any money in the town treasury or the first that shall come into the treasury belonging to the road and bridge fund not otherwise appropriated." Section 5, contains similar provisions in reference to the payment of the respective proportions of the counties of Hennepin and Wright.

The complaint alleges, that the commissioners made a contract in writing with plaintiff for the construction of the bridge for twenty-eight hundred dollars, that copies of the contract were filed ; that he constructed and completed the bridge in accordance with the terms of the contract; that after its completion the commissioners examined the bridge and accepted the same in writing, and that copies of the acceptance with detailed statements of the cost of the bridge were filed,—all in compliance with the provisions of the act aforesaid. It is further alleged, that the towns and counties aforesaid immediately took possession of and entered upon the use of the bridge, and have ever since continued to use, occupy, and exercise full authority and control over the same. The complaint further shows, that the due proportion to be paid by the defendant—the town of Otsego—on account of the

Guilder v. The Town of Otsego.

construction of the bridge, was five hundred and sixty dollars (being the two-tenths aforesaid ;) that due proof of the completion and acceptance of the same as provided for by said act was furnished to the supervisors of said town of Otsego, and that plaintiff has since repeatedly demanded of said supervisors that they issue to him the town order of said town for the sum of five hundred and sixty dollars, but the said supervisors ever have, and still do, refuse to issue said order or pay said amount  This action is brought against the town of Otsego to recover said sum and interest. A general demurrer to the complaint was interposed, defendant insisting that the special act was unconstitutional, and if not, that plaintiff's sole remedy was by mandamus.   The demurrer was sustained on the latter ground.

In support of the order sustaining the demurrer, it is argued here that the special act under which plaintiff claims, violates sections 1, 2, 3, 4, art. 9, and section 5, art. 11, of our State Constitution.   As to sections 1, 2, 3, 4, art. 9, the claim is that the act, in its effect, involves taxes not " equal," and which are to be levied without any regard to " cash valuation " of property.   The middle of the channel of Crow river is the boundary between Hennepin and Wright counties, and between the towns of Otsego and Dayton, as appears by sections 25 and 74, ch. 8, General Statutes, and by the map, the complaint and the act aforesaid.   In accordance with the practice usual in such cases, the bridge (unless built by the state) would be one, the burden of constructing which would fall upon the counties of Hennepin and Wright, or upon the towns of Otsego and Dayton, or upon the towns and counties together, each town or county, as the case might be, constructing or contributing to construct the portion of such bridge which would fall within its territorial limits.   The act under consideration divides the expense of constructing the bridge equally

between the county of Wright and the town of Otsego on the one hand; and the county of Hennepin and its town of Dayton on the other. This would, upon the face of it, appear to be a fair and equal apportionment of the expense of making a public improvement in which said counties are equally interested, and said towns are equally interested. At any rate, no mere supposition or presumption that it may be unfair or unequal is to be indulged in for the purpose of assailing the constitutionality of a law, which, as an act of legislation, is to be presumed constitutional till something appears affirmatively to the contrary. And the same remarks may be made with reference to the apportionment between each county and the town belonging to the same. The reasons which have so often led to the sharing by a county and one of its towns of the cost of the construction of a bridge, are too obvious and familiar to require particular mention for the purpose of showing the intrinsic fairness and equality of such a course. The proportions in which this expense is to be shared must necessarily be a matter of sound discretion. Assuming, then, the fairness and equality of the distribution of the cost of constructing this bridge among the several counties and towns named in the act, the objection that the act in question is violative of sections 1, 2, 3, 4, art. 9, is answered.

If it should be necessary to raise taxes to pay for the bridge, (as it may not be under the act) they are to be raised as other taxes are under the general laws, upon a cash valuation of the property on which they are levied, and with the same regard for equality as in ordinary cases.

The other objection is that the act in question infringes section 5, art. 11, of our Constitution. This section declares that " any county and township organization shall have such powers of local taxation as may be prescribed by law." While it authorizes the legislature to confer such power of local

taxation as it may see fit, and authorizes the counties and towns to exercise the power which may be conferred, it does not inhibit or exclude the legislature from directing a county or town to make a needed public improvement (like the bridge in this case) and to pay for the same by taxation.

So far as any question of the power of local taxation is involved, this would be a case in which the right to exercise the power (in the sense of determining the purposes for which taxes shall be levied and the amount thereof,) was withheld from, and not conferred upon, the town of Otsego, and therefore remained with the general legislative authority. This disposes of the constitutional questions raised in the case, in treating which it will be observed that though the act in question makes no mention of taxation, we have assumed— as have the counsel on both sides—that taxation would or might result from carrying it into practical operation.

The remaining position taken by defendant in support of the demurrer is, that admitting the act under consideration to be constitutional, the plaintiff's sole remedy is by mandamus to compel the town supervisors to issue a town order for the amount of his claim; and this is the ground, as before remarked, upon which the demurrer was sustained by the court below.

By section 4 of the act under which the bridge was built, the amount claimed by the plaintiff was made a charge upon and was to be paid by the defendant. In other words, a legal liability was imposed upon defendant to pay the plaintiff said amount, which is equivalent to saying that a *debt* was declared by law to exist in favor of plaintiff against defendant. The consideration of this debt was the building of the bridge in which defendant was interested. It formed part of a public highway within defendant's territorial limits, a highway which under the general practice it would be incumbent

on defendant to put in order for public travel. Two counties and two towns being interested in the construction of the bridge, it seems to have been very wisely ordered that it be built as a joint enterprise, each town and county being properly and fairly charged with an obligation to contribute what was deemed by the legislature in the exercise of its discretion to be its just proportion of the expense. So far as the character of defendant's liability to plaintiff is concerned, and the plaintiff's right to enforce payment of the same, we see nothing to distinguish the case of this debt from that of any other which defendant, or any private person, might owe, unless it be that in this case it would, we presume, be incumbent on plaintiff to make demand of town orders (as he has done,) before commencing suit. When this demand has been made, and compliance therewith refused, there is no reason why plaintiff has not a cause of action against the town upon its *indebtedness* to him, which he may proceed to enforce by action against the town as any other indebtedness under like circumstances. *Gen. Stat., chap.* 10, *sec.* 84; *Bingham vs. Board Supervisors Winona County*, 8 *Minn.* 441; *Murphy vs. Co. Commissioners Steele County*, 14 *Minn.* 67; *Raymond vs. Co. Commissioners Stearns County*, 18 *Minn.* 61.

The liability of the town is absolute. The act points out a course in which it may be discharged. Having refused to take that course, it is with bad grace that the town objects to the form of a proceeding in which plaintiff seeks to enforce his rights as upon any other absolute indebtedness.

Order sustaining demurrer reversed.