# KATHERINE DUSENKA v. FRANK DUSENKA, JR.[1]

February 8, 1946.

No. 34,076.

*Julius A. Coller, II,* for appellant.
*L. W. Crawhall,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying plaintiff's motion for a new trial.

For several years prior to 1937, the defendant, Frank Dusenka, Jr., in partnership with his father, Frank Dusenka, Sr., operated an

[1]Reported in 21 N. W. (2d) 528.

on-sale liquor tavern in Minneapolis. In 1937, the elder Dusenka transferred his one-half interest in the business to his son, the defendant, in consideration of the son's promise to support and maintain his father during his lifetime, subject, however, to the understanding that the father would continue to assist in the operation of the business. Plaintiff, wife of the senior Dusenka and stepmother of defendant, was not informed of the transfer and did not learn thereof until after the death of her husband. Practically every day, before and after 1937, inclusive of the period covered by this suit, namely, from September 1, 1938, to February 3, 1943, plaintiff accompanied her husband to the place of business around eight or nine in the morning, remained there until about one in the afternoon, and returned later in the evening. Plaintiff prepared breakfast for her husband after arriving at the tavern and also prepared certain other meals at the tavern for him and defendant as well. She at times also performed such services as cleaning up and scrubbing, tending bar, and furnishing some meals for guests or patrons that might come to the place. Plaintiff testified that her husband first became ill in 1938; that in 1939 he required hospitalization; and that thereafter "he feel badly and I help him." About February 3, 1943, her husband became seriously ill and died about February 9. Plaintiff received no pay from defendant for services performed between September 1938 and February 3, 1943, but for services performed subsequently to the death of her husband, at defendant's request, she was paid by defendant.

Plaintiff's suit is for remuneration for services rendered to defendant between September 1, 1938, and February 3, 1943. There was no contract, either express or implied, between plaintiff and defendant, for the performance of these services. We have no evidence that defendant ever expected to be required to pay for them. Plaintiff, by her brief, concedes that at no time before or during the performance of these services was there any intention or expectation of payment on her part, and she alleges that she rendered these services in the belief that "the place she was helping to run belonged to her 'mister' instead of the defendant." Furthermore,

there is no evidence that plaintiff, either before or during the period when she rendered the services, ever requested, or intended, that defendant should pay for even a part of the services to correspond to what she thought was his share in the business as distinguished from that of her husband. Plaintiff does contend, however, that she always believed she was rendering these services for her husband and not for her stepson, the defendant. Clearly, plaintiff assumed at all times prior to her husband's death that he and defendant operated the business as partners. In fact, not until after her husband's death, when she discovered that he had in 1937 transferred his entire interest in the business to defendant, did she conceive a desire to be paid.

From the time the elder Dusenka in 1937 transferred his interest to his son until the time of his death, he received no regular wages or pay for his services, but at all times he enjoyed, and exercised, the unrestricted right or privilege of taking from the cash register whatever money he needed for living expenses, for the maintenance of his home and family, and for the payment of medical and hospital bills.

At the close of plaintiff's case, defendant rested provisionally and moved for a directed verdict on the ground that plaintiff had failed to show an employment or agreement for hire.

■ In determining the principles to be applied, significant is the admitted fact that neither plaintiff nor defendant had, prior to or during the performance of plaintiff's services, any intention or expectation that plaintiff should be paid. Plaintiff's intention or desire to be paid was not conceived until after the services had been fully performed. Obviously, there was no actual contract to pay, either express or implied in fact. A contract may be implied in fact, but not contrary to the common and undisputed intention of both parties. 1 Williston, Contracts (Rev. ed.) § 21, note 1. See, Central Bitulithic Paving Co. v. Village of Highland Park, 164 Mich. 223, 129 N. W. 46, Ann. Cas. 1912B, 719; Houston v. Monumental Radio, Inc. 158 Md. 292, 148 A. 536. Where both parties actually intend that there shall be no contract and that

intent is known and admitted, there is no occasion to consider the existence or nonexistence of any objective manifestations to the contrary. Intent to contract cannot be supplied as an afterthought. In re Estate of Sickmann, 207 Minn. 65, 289 N. W. 832, and cases cited; Annotation, 54 A. L. R. 548, at p. 551.

"* * * all contracts must be good or bad in their original crea-tion, and must not depend on subsequent contingencies. Liability for services cannot hinge on whether the party chooses at a future date to make them a gift or a charge." (Italics supplied.) 28 R. C. L., Work and Labor, § 6, pp. 670 and 671.

■ Where services are admittedly rendered or benefits conferred voluntarily, without intention of receiving compensation on the part of the one rendering the services, and the person for whom they were rendered accepted them in reliance upon such intention, no actual contract to pay is implied in fact.[2]

Cases involving contracts implied in fact, cited in support of plaintiff's contentions, are not in point; they illustrate only that the requisite intent for an implied contract in fact may be inferred from the conduct or objective manifestations of the parties.[3] Here, we have no issue as to the existence or nonexistence of intent.

In McArdle v. Williams, 193 Minn. 433, 258 N. W. 818, a case relied upon by plaintiff, the mortgagor, whose farm was about to be lost through expiration of the period of redemption from mort-

[2]Deane v. Hodge, 35 Minn. 146, 27 N. W. 917, 59 Am. R. 321; Keough v. Wendelschafer, 73 Minn. 352, 76 N. W. 46; Carlson v. Krantz, 172 Minn. 242, 214 N. W. 928, 54 A. L. R. 545; In re Estate of Sickmann, 207 Minn. 65, 289 N. W. 832; Hammond v. Consolidated Rendering Co. 125 Me. 491, 135 A. 197; Carey Lithograph Co. v. Magazine and Book Co. 70 Misc. 541, 127 N. Y. S. 300; 3 Page, Contracts, § 1446; 28 R. C. L., Work and Labor, § 6, p. 670.

[3]Deane v. Hodge, 35 Minn. 146, 27 N. W. 917, 59 Am. R. 321 (for discussion of above case see, Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 275, 181 N. W. 584, 585); Stanger v. Pandolfo, 144 Minn. 294, 175 N. W. 912; Benedict v. Pfunder, 183 Minn. 396, 237 N. W. 2; Dybvig v. Minneapolis Sanitorium, 128 Minn. 292, 150 N. W. 905; McArdle v. Williams, 193 Minn. 433, 258 N. W. 818.

gage foreclosure, plowed 150 acres only after negotiating with the mortgagee and obtaining an understanding that he would receive as compensation therefor the possession and use of the farm either by repurchase or on a share-rental basis. In other words, McArdle performed his work only after he had an understanding that he himself was to derive a benefit or compensation for his labors. In the instant case, no such understanding can be found by implication in fact or otherwise.

■ If plaintiff is to recover at all, it must be on the theory of a quasi contract, which is sometimes called a contract implied in law. Unfortunately, much confusion has resulted from a careless use of terminology and failure to observe a clear distinction between actual contracts and quasi contracts. In the well-considered opinion of McArdle v. Williams, *supra,* the distinction is clearly indicated. See, Restatement, Contracts, § 5, and Minn. Annotations, Pocket Supp. (1934) § 5; 12 Am. Jur., Contracts, § 6; 3 Dunnell, Dig. & Supp. § 4300. Suffice it to say that quasi contracts are not contracts at all, for "neither promise nor privity, real or imagined, is necessary." Town of Balkan v. Village of Buhl, 158 Minn. 271, 275, 197 N. W. 266, 267, 35 A. L. R. 470. The quasi-contractual obligation is raised or imposed by law and is independent of any real or expressed intent of the parties. The obligation is called quasi-contractual because as a matter of legal history the remedy took the contract form just as if based on an actual contract or agreement. Carr v. Anderson, 154 Minn. 162, 191 N. W. 407, 26 A. L. R. 557. Under the theory of a quasi contract, the obligation is defined in equity and good conscience and is imposed by law to prevent unjust enrichment at the expense of another. See, Restatement, Restitution, § 1.

In applying the principles of quasi contract to the instant case, the question is whether defendant wrongfully and knowingly permitted plaintiff, through her mistake as to the ownership of the business, to confer upon him, without compensation, the benefit of her services to his unjust enrichment. Restatement, Restitution, § 40, *comment c.* Neither her husband, the elder Dusenka, nor de-

fendant informed plaintiff of the sale and transfer by her husband of his one-half share in the business to defendant. If there was a duty by the stepson to tell his stepmother that which her husband, for some unknown reason, had not told her, does it reasonably follow that, if she had been so informed, she would have ceased to perform the services without compensation? The evidence indicates that plaintiff's services were rendered for the primary purpose of easing the daily tasks of her sick and ailing husband, whose health she wished to protect. She accompanied him in the morning and at the tavern prepared his and her own breakfast, as well as the other meals of the day. It is apparent that the other tasks she performed were comparatively light and, for the most part, designed to relieve her husband. She came voluntarily and apparently enjoyed the atmosphere. Plaintiff's motive is apparent from the fact that, although she always assumed that defendant owned a half interest in the business, she never at any time asked or expected to be paid by defendant in proportion to such interest. She also knew that her husband had children by his first marriage and that, in case of his death, these children would normally inherit a two-thirds interest in the half share that she supposed he still owned. If plaintiff had been informed of the transfer of her husband's interest, there is no reason to suppose, under all the circumstances of this case, that she would have altered her course of conduct or her expectations, in the slightest degree, and for this reason we can attach no significance to, nor imply any breach of good faith in, defendant's failure to disclose his purchase of the father's interest. Defendant was in a difficult position. If he had asked plaintiff to stay away from the tavern, he would have offended and embarrassed his own father, who was in need of assistance. We find no unjust enrichment for defendant. He had obligated himself to maintain his father for life, and, in fulfillment of that obligation, he permitted his father, plaintiff's husband, to have unrestricted access to the cash register to take whatever money he desired or needed for the payment of his personal and family expenses, inclusive of clothes, groceries, and all medical and

hospital bills. We find no evidence of fraud, such as in the case of Boardman v. Ward, 40 Minn. 399, 42 N. W. 202, 12 A. S. R. 749. Construing the evidence in the light most favorable to plaintiff, we hold that the court properly directed a verdict for defendant.

Affirmed.