PHILIP ROSKE AND ANOTHER v. ANDREW ILYKANYICS, ALSO KNOWN AS ANDREW ELKANICS, AND ANOTHER.[1]

January 12, 1951.

No. 35,215.

---

[1]Reported in 45 N. W. (2d) 769.

*Gordon Rosenmeier,* for appellants.
*Ahles & Ahles,* for respondents.

KNUTSON, JUSTICE.

Appeal from an order denying alternative motion for amended findings or a new trial.

Many of the facts are not seriously in dispute. Plaintiffs are husband and wife. Defendants are the parents of plaintiff Susan Roske, wife of Philip. During the summer of 1947, plaintiffs were both employed by St. John's University at Collegeville. Philip, as an electrician, earned about $225 per month, and Susan, working in the school laundry, earned about $120 per month. Philip had been so employed since 1934, with the exception of a period of about two years when he was in the United States Navy.

Defendant Andrew Ilykanyics, who was 80 years old, and his wife, who was 76 years old, at the time of the trial owned and lived on a 200-acre farm near Bowlus, Minnesota. During the season of 1947, the farm was operated on a crop-share basis by one of their sons, Andrew Bell, who was unmarried. In June 1947, both defendants were ill and went to the home of plaintiffs, where they were cared for. Defendant Andrew was taken to the hospital at St. Cloud, where he remained for about two weeks, after which he

returned to plaintiffs' home, where both parents remained for an additional seven weeks. During that time, defendants and plaintiffs had some conversation concerning a proposal that plaintiffs quit their jobs and take over the management of the farm. Plaintiffs contend that these discussions led to an oral agreement that if they would give up their jobs, move to the farm, and take care of the old folks as long as they lived plaintiffs would be given the farm upon the death of the survivor of the parents and that they would be given the personal property outright in consideration of their giving up their jobs. These claims are disputed by defendants, but from the evidence a jury could have so found. At any rate, on August 19, 1947, both parents and Philip went to Little Falls and consulted an attorney. The parents were unable to speak English, so an interpreter was secured. A bill of sale was then drawn, which was explained by the interpreter to defendants. The bill of sale was signed by both defendants, and it was delivered to the lawyer, who promptly filed it for record in the office of the register of deeds. Plaintiffs then resigned their positions and moved to the farm. On September 11, 1947, plaintiffs and defendants executed a lease which provided in part that plaintiffs were to care for the old folks and have the farm during their lifetime, but the court found that this lease was executed for the sole purpose of enabling Philip to qualify for G.I. benefits under the farm-training program, and on motion of defendants the action based upon the lease was dismissed.

The relationship between the parties apparently remained amicable for about a year. In July 1948, a dispute arose between Philip and Andrew about the right to sell some pigs. In September, Andrew went to see a lawyer and ascertained that the bill of sale was absolute in form, and upon returning to the farm he told Philip to "Take the property and get off of the place. You ain't getting nothing more than you got." Thereafter, the feelings between the parties became worse, culminating in an attempt by Andrew to shoot Philip in February 1949. Philip then petitioned the probate court to have Andrew committed for senility, which petition was withdrawn when another son agreed to care for defendants.

In March 1949 this action was started. On April 11, 1949, plaintiffs sold the personal property at auction sale. The net proceeds of the sale amounted to $3,580.83. Plaintiffs then left the place, and it is conceded by all parties that the feelings between plaintiffs and defendants now are such that it is impossible to carry out the agreement for support.

The court submitted the case to the jury on five interrogatories, which were answered by the jury as follows:

"1. Was there an oral agreement?

"Answer: Yes.

"2. If you answer interrogatory No. 1 in the affirmative: Who breached that agreement?

"Answer: Defendants.

"3. If you answer interrogatory No. 1 in the affirmative and if you further find that defendants breached the agreement by rendering further performance thereof by plaintiffs impossible, in what sum were defendants enriched by an increased or enhanced value of the farm by reason of the improvements made thereon by plaintiffs?

"Answer: $1474.00.

"4. In what sum were defendants enriched by the care rendered to them by plaintiffs?

"Answer: $1050.00.

"5. Was the bill of sale which defendants executed and delivered to plaintiffs procured by plaintiffs from defendants by fraud and deceit?

"Answer: No."

The court thereafter adopted the jury's findings, and made findings of fact, conclusions of law, and order for judgment permitting plaintiffs to recover $1,474 as improvements to the farm and $1,050 as the reasonable value of services rendered in caring for defendants. The court found that the personal property was a gift to plaintiffs.

The questions raised by this appeal are:

(1) Does it appear as a matter of law that the bill of sale trans-

ferring the personal property to plaintiffs was an integral part of the oral agreement for support?

(2) May plaintiffs recover in quasi contract the reasonable value of services rendered and improvements made to the farm without making restitution of that which they have received?

(3) Was it error to submit the case to the jury on special interrogatories without submitting it for a general verdict?

 The court found that the transfer of the personal property to plaintiffs was a gift. None of the parties so contended, nor is there any evidence of a gift. The evidence would sustain a finding that the personal property was transferred absolutely to plaintiffs in consideration of their giving up their positions at St. John's University. The bill of sale was executed prior to the resignation. It is absolute in form. It was executed prior to their moving to the farm. Plaintiffs testified that they would not have resigned their jobs unless they had had some security, and that they agreed to do so only after they had been given a bill of sale to the personal property. The absence of either a finding or a jury verdict on this issue precludes our so holding.

An oral contract to convey land is within the statute of frauds and unenforceable unless taken out of the statute by part performance. Goette v. Howe, 232 Minn. 168, 44 N. W. (2d) 734. Both parties concede that the contract cannot be performed, so we.have no question of specific performance. Plaintiffs' claim is based largely on two elements of damages, namely, the improvements to the farm in anticipation of ownership upon completion of the contract, and the value of services rendered in caring for the old folks. Plaintiffs contend that defendants have been unjustly enriched by virtue of the benefits they have received and that plaintiffs have not been able to complete the contract because of the actions of defendants. The measure of damages for improvement to the farm is the enhanced value of the premises. Lepak v. Lepak, 195 Minn. 24, 261 N. W. 484. The court correctly submitted this element of damages in the special interrogatory shown above.

In consideration for the services rendered in caring for the old folks, plaintiffs received the entire income from the farm. They were permitted also to recover the reasonable value of their services. Where services have been rendered under an oral contract to convey land, unenforceable by the statute of frauds, recovery may be had on the theory of quasi contract. Pfuhl v. Sabrowsky, 211 Minn. 439, 1 N. W. (2d) 421. The measure of damages is the value of the services rendered, less the benefits received thereunder. Plaintiffs may recover the reasonable value of the services rendered in performance of the contract, but before they can do so they must make restitution of the reasonable rental value of the farm. This has not been done. See, Restatement, Contracts, § 347, illustration 6, p. 590.[2]

It is the contention of defendants that restitution of the value of the personal property received by plaintiffs must also be made. That depends upon whether the bill of sale was an integral part of the contract to support the old folks or whether it was a separate transaction consummated as consideration for plaintiffs' resigning their positions at St. John's University. If the latter, it should not be offset or required to be returned as restitution, since they had then fully completed that part of the agreement, and that part of the contract would be fully executed. Defendants' contention is that the bill of sale was procured by fraud. The jury answered that issue contrary to defendants' contention. Defendants agreed that the issue of fraud might be submitted on a special interrogatory. Were it not for the fact that the ultimate issue as to consideration for the bill of sale is unanswered by both court and jury, we would be inclined

---

[2] "A promises to buy Blackacre of B at a specified price; and in return B promises to transfer Blackacre to A and also to leave Whiteacre to him by will on condition that he supports and cares for B for life. After A has made improvements on Blackacre and has supported B for two years, B repudiates the contract and refuses to transfer either tract of land. A can get judgment for the reasonable value of the support rendered and of the improvements made, less the amount of benefit received under the contract from the use and occupation of Blackacre or otherwise."

to hold that this issue has been settled. However, the only finding of the court is that the bill of sale was a gift, which is unsupported by both pleadings and proof.

 In considering the right to recover in a case of this kind, it is important to keep in mind the distinction between implied contracts and quasi contracts. The distinction is clearly pointed out in McArdle v. Williams, 193 Minn. 433, 258 N. W. 818. See, also, Restatement, Contracts, § 5, *comment a*. Quasi contracts are not contracts at all in the legal sense, Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 181 N. W. 584, for "Neither promise nor privity, real or imagined, is necessary." Town of Balkan v. Village of Buhl, 158 Minn. 271, 275, 197 N. W. 266, 267, 35 A. L. R. 470. The quasi-contractual obligation is raised or imposed by law and is independent of any real or expressed intent of the parties. The obligation is called quasi-contractual because, as a matter of legal history, the remedy took the contract form much as if based on an actual contract, express or implied. Dusenka v. Dusenka, 221 Minn. 234, 21 N. W. (2d) 528. Historically, while recovery under the theory of quasi contract may have had its origin in equity, it developed as a branch of the common law, and the remedy took the contract form, much the same as if the obligation had been founded on an actual contract. Restatement, Restitution, Part I, Introductory Note. It probably emerged as a branch of the common law in the case of Moses v. Macferlan [1760] 2 Burr. 1005. Woodward, Law of Quasi Contracts, § 2. The right to recover is governed by principles of equity, Seastrand v. D. A. Foley & Co. 144 Minn. 239, 175 N. W. 117, but the remedy is governed by the law, much as if an actual contract had been established. The legal remedy being adequate, the court may not decide the case as one sounding in equity and thereby deprive the parties of a right to a jury trial in the absence of a waiver of such jury. Bankers Reserve Life Co. v. Omberson, 123 Minn. 285, 143 N. W. 735, 48 L.R.A.(N.S.) 265.

The trial court has indicated in its memorandum that it understood from conferences with attorneys for the respective parties that it had been agreed that the case might be submitted on the

five interrogatories mentioned above and that as a result it followed the equitable procedure in so doing and in reaching the final decision. The court also stated that special interrogatories control the general verdict and that the judge may in every case require specific questions of fact to be answered. If this is done, the trial court reasoned, it is immaterial whether the jury is required to render a general verdict or not.

Of course, a right to a jury trial on all or some of the issues involved may be waived. M. S. A. 546.26 provides the following methods of waiver:

"In actions arising on contract, and by permission of the court in other actions, any party thereto may waive a jury trial in the manner following:

"(1) By failing to appear at the trial;

"(2) By written consent, by the party or his attorney, filed with the clerk;

"(3) By oral consent in open court, entered in the minutes."

The statutory methods of waiver are not exclusive, but when some other manner of waiving a jury than that specified by the statute is relied upon the intention to waive must be clear and unequivocal. Poppitz v. German Ins. Co. 85 Minn. 118, 88 N. W. 438; Hasey v. McMullen, 109 Minn. 332, 123 N. W. 1078.

The record fails to disclose any showing of a waiver of a jury trial. Counsel for defendants denies any such agreement or understanding. At the close of the case, counsel excepted to the failure of the court to submit a general verdict. Under these circumstances, we cannot hold that there has been a waiver of a jury trial. Neither can we hold that there has been no prejudice on the ground that the verdict is a special verdict covering all issues of fact.

The nature of the action determines whether a litigant is entitled to have the jury return a general or special verdict, or if it may be submitted on special interrogatories. Section 546.20 provides:

"In every action for the recovery of money only or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases the court may direct the jury to find a special verdict in writing upon all or any of the issues, and in all cases may instruct them, if they render a general verdict, to make a written finding upon any particular question of fact submitted to them in writing. Where the special finding of facts is inconsistent with the general verdict the former shall control the latter, and the court shall give judgment accordingly."

General and special verdicts are defined by § 546.19 as follows:

"A general verdict is one by which the jury find generally upon all the issues in favor of the plaintiff or defendant. A special verdict is one by which they find the facts only, and it shall so present the conclusions of fact as established by the evidence that nothing remains to the court but to draw from them conclusions of law."

It is important to keep in mind the distinction between special verdicts and special findings or interrogatories submitted with a general verdict. "A special verdict is one by which a jury finds the facts only. It so presents the findings of fact as established by the evidence that nothing remains for the court to do but to draw therefrom conclusions of law." Ferch v. Hiller, 209 Minn. 124, 127, 295 N. W. 504, 506; 39 Wd. & Phr. (Perm. ed.) p. 733. It is discretionary with the trial court whether or not to submit special questions with a general verdict. Zuponcic v. Val Blatz Brg. Co. 131 Minn. 112, 154 N. W. 790; Halos v. Nachbar, 196 Minn. 387, 265 N. W. 26.

The jury in its discretion may return a general or a special verdict. If it does render a special verdict which covers all issues in the case, failure of the court to submit a case to the jury for a general verdict would be without prejudice. Riley v. Mitchell, 36 Minn. 3, 29 N. W. 588; Morrow v. St. Paul City Ry. Co. 74 Minn. 480, 77 N. W. 303.

It is not, however, discretionary with the court whether to submit a general verdict or not. Schultz v. Cremer, 59 Iowa 182, 13 N. W. 59; Jones v. Brooklyn L. Ins. Co. 61 N. Y. 79; Sherman v. Leicht,

238 App. Div. 271, 264 N. Y. S. 492; Blied v. Barnard, 116 Minn. 307, 133 N. W. 795.

The purpose of a special verdict is to furnish the basis for the judgment, while the purpose of special interrogatories is to elicit facts to test the correctness of the general verdict. Freedman v. N. Y. N. H. & H. R. Co. 81 Conn. 601, 71 A. 901, 15 Ann. Cas. 464.

A special verdict is in lieu of a general verdict, and its design is to exhibit all the ultimate facts and leave the legal conclusions entirely to the court, while an answer to a special interrogatory may respond to a single inquiry pertaining to one issue essential to the general verdict. Morby v. C. & N. W. Ry. Co. 116 Iowa 84, 89 N. W. 105.

In this case, all the issues have not been determined by the jury, even assuming that the case had otherwise been free from error. After the jury had found that there was no fraud in the procurement of the bill of sale, the court made a finding that the personal property was transferred to plaintiffs as a gift. Neither party claimed that there was any gift of the personal property, nor is there any evidence thereof. The essential characteristic of a gift is that it is a transfer without consideration. 18 Wd. & Phr. (Perm. ed.) p. 317. Neither party claims that the transfer of the personal property was without consideration, nor is there any evidence to sustain a finding that the transfer lacked consideration. Plaintiffs contend that the consideration for the transfer of the personal property was the resignation of their positions at St. John's University. Defendants, on the other hand, contend that it was part of the agreement to support them as long as they might live. This issue was never submitted to the jury, nor did the court make any finding thereon. The jury passed only on the question whether the bill of sale was procured by fraud. Determination of what was the consideration for the bill of sale was vital to a determination of what restitution must be made if plaintiffs are to recover the reasonable value of their services on the theory of quasi contract. Were this a case in which the court could make findings of fact without submission of the issue to the jury, the remedy would be

to send the case back so that the court could make such findings, Osbon v. Hartfiel, 201 Minn. 347, 276 N. W. 270; but, in the absence of a waiver of a jury trial, this issue is for the jury, not for the court.

Even though the bill of sale is absolute on its face, if as a part thereof an oral agreement was entered into requiring plaintiffs to support defendants during their lifetime as consideration for the transfer of the personal property, it would be necessary that restitution of the personal property be made before plaintiffs could recover the reasonable value of their services on the theory of quasi contract. In Bruer v. Bruer, 109 Minn. 260, 265, 123 N. W. 813, 814, 28 L.R.A.(N.S.) 608, which involved the transfer of real estate by a deed absolute on its face, we said:

"* * * There is in such transactions an element of confidence reposed by the old people in their grantee, sacred in its nature, a breach of which, and retention of the benefits, no court should tolerate by a refinement upon technical rules and principles of law. By the modern trend of authority these transactions are placed in a class by themselves, and enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture of the estate is expressly provided for."

Here, the bill of sale shows a consideration of "One Dollar and other valuable considerations to them in hand paid * * *." The expression of a consideration in a written contract does not exclude proof by parol of another or different consideration where the written instrument is given in part performance of an oral agreement. Jordan v. White, 20 Minn. 77 (91); Healy v. Young, 21 Minn. 389; Sayre v. Burdick, 47 Minn. 367, 50 N. W. 245.

Whether the bill of sale was a separate contract or part of the oral contract requiring plaintiffs to support defendants as long as they might live was a question for the jury. Bundy v. Voelker, 145 Minn. 19, 175 N. W. 1000.

The jury found that there was an oral agreement. The court

found what the terms of the agreement were. The existence and terms of the contract are both questions for the jury. See, International Glass Co. v. Krouse (3 Cir.) 282 F. 206.

Defendants were entitled to have the case submitted to the jury in such form that it could render a general verdict. For this and other errors mentioned above, there must be a new trial.

Reversed.