Carl B. MJOLSNESS, Appellant,

v.

Lucille M. MJOLSNESS, Respondent.

No. C3–84–1197.

Court of Appeals of Minnesota.

March 12, 1985.

Stanley J. Mosio, St. Paul, for appellant.

Lorraine Blake, Seth R. Phillips, Newport, for respondent.

Heard, considered and decided by FORSBERG, P.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

Carl Mjolsness seeks a partition of real property purchased singly by Lucille Mjolsness, alleging he is entitled to one-half of the property as a putative spouse or under equitable theories of constructive trust and contract. Lucille counterclaimed for damages. The trial court found Carl had no legal or equitable interest in the real property and denied Lucille's counterclaim. We affirm.

## FACTS

Carl Mjolsness and Lucille Mjolsness were married in 1946 and divorced on March 23, 1970. Carl was served with the divorce decree within a few days of issuance.

Carl testified that on March 23, 1970, Lucille called him, said she wanted to get back together with him, and told him her attorney advised her that if they had sexual relations before midnight of that day, the divorce would be invalidated. Lucille strenuously denies Carl's allegation. Carl claims that as a result of Lucille's representations he held a good-faith belief until 1980 that they continued to be married.

For several weeks thereafter the parties saw each other nearly every day but did not live together. In July 1970 Lucille purchased a house at 227 South Wheeler, St. Paul, in her own name (the Wheeler house). She paid the downpayment and closing costs from funds she obtained from her mother and stepfather. Carl made no monetary contribution toward the purchase. Carl moved into the Wheeler house with Lucille and the children. Lucille said she allowed this because she wanted companionship and hoped they might remarry. Carl testified that they wanted to provide a family home.

Carl alleges the parties agreed they would own the house together, that they would represent that Lucille was the sole owner because his business losses had resulted in a large indebtedness, and that Lucille would hold his interest in trust.

Lucille denies this. She claims they agreed the house was hers alone and that Carl would pay $70 per month for room and board while he lived there. She also testified that any repair and maintenance work Carl did on the house was to be part of his room and board.

During the time period relevant to this action, Carl was unemployed. His income consisted solely of benefits he received from the Social Security Administration and the Veteran's Administration because of a disability. By virtue of Carl's disability, the Social Security Administration also provided an allowance to Lucille and the minor children of the parties. In the divorce decree Carl's responsibility for support and alimony was limited to the allowance provided by the government.

During the same time period, Lucille was employed full-time at the Veteran's Administration. Substantially all of her income was applied to support herself and the minor children and to maintain, repair, and pay the mortgage on the homestead.

Carl did not pay the room and board agreed upon but did contribute his services in maintaining and performing substantial repairs on the home. Carl also acted as bookkeeper for the household.

The parties lived together in the Wheeler house until April 1980, when Carl left after Lucille filed an unlawful detainer action against him.

Subsequently Carl sought a court order to declare the parties tenants-in-common in the Wheeler property, to partition the property, and to divide the proceeds equally between them. Lucille counterclaimed for damages. The case was tried to the court without a jury. The trial court denied Carl's requested relief, concluding in part that Carl was not a putative spouse and that he had no equitable interest in the Wheeler property. Lucille's claim for damages was denied.

## ISSUES

1. Did the trial court err in concluding that Carl was not a putative spouse?

2. Did the trial court err in concluding that Carl has no equitable interest in the Wheeler property and therefore is not entitled to partition?

## DISCUSSION

### I

Carl contends the trial court erred in finding he was not a putative spouse. Minn.Stat. § 518.055 (1982) provides in part:

Any person who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse until knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights. A putative spouse acquires the rights conferred upon a legal spouse
* * *.

Carl contends he held a good-faith belief that he was married to Lucille after their divorce because of her representations to him. Thus, he claims to be a putative spouse and seeks the rights belonging to a legal spouse, including an interest in the Wheeler property.

■ Most of the evidence in this case consists of conflicting testimony between the two parties and their witnesses. The trial court was able to observe the witnesses and had the opportunity to judge their credibility on a first-hand basis. Trial court findings which are a product of first-hand observation possess a certain integrity not contained in the written record alone. *Hollom v. Carey,* 343 N.W.2d 701, 704 (Minn.Ct.App.1984) (citing *Tamarac Inn, Inc. v. City of Long Lake,* 310 N.W.2d 474 (Minn.1981)). Consequently, the findings of the trial court should not be disturbed unless, upon review of the entire evidence, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* (citing *City of Minnetonka v. Carlson,* 298 N.W.2d 763 (Minn. 1980)).

■ There is testimony from which the trial court could have concluded that Carl knew he and Lucille were divorced. For example, Carl prepared Lucille's tax returns listing her as a single person. It also appears there was at least one discussion, corroborated by the parties' daughter, Bonnie Brown, concerning the possibility of their remarrying in New Orleans. Furthermore, receipt of the divorce decree is strong evidence that Carl did not reasonably believe he was still married. We find no evidence to indicate the trial court erred in finding that Carl failed to prove he was a putative spouse; thus, its ruling will not be disturbed on appeal.

### II

Carl argues that even if he is not a putative spouse, he is entitled to an interest in the Wheeler house under equitable theories of constructive trust and implied contract.

#### *Constructive Trusts*

"[A] constructive trust is a judicially created equitable remedy imposed to prevent unjust enrichment of a person holding property under a duty to convey it or use it for a specific purpose." *Wright v. Wright,* 311 N.W.2d 484, 485 (Minn.1981) (citing *Koberg v. Jones,* 279 Minn. 406, 157 N.W.2d 47 (1968)). "The court must only be persuaded by clear and convincing evidence that the imposition of a constructive trust is justified to prevent unjust enrichment." *In Re Estate of Eriksen,* 337 N.W.2d 671, 674 (Minn.1983) (citing *Knox v. Knox* 222 Minn. 477, 481, 25 N.W.2d 225, 228 (1946)). Carl argues that Lucille would be unjustly enriched by receiving the sole benefit of his labor and financial contributions to the household.

■ The trial court found that Lucille purchased the Wheeler house in her own name and paid the downpayment and closing costs from funds she procured on her own. Carl made no contribution of any kind toward the purchase, nor did he prove there was an agreement that the house would be owned one-half by each. The court also found that Carl failed to pay the

room and board agreed upon and that the value of his services in repairing and maintaining the house did not exceed the value of the room and board received. Carl argued strenuously that he paid the mortgage payments. This was not proved, however, because the parties commingled their funds to a great extent. Moreover, the court specifically found that the funds contributed by Lucille paid the mortgage because Carl's monetary contributions to the household expenses did not exceed the value of his room and board.

We find nothing in the record to suggest clear error by the trial court; therefore, its refusal to grant a constructive trust is sustained.

### Implied Contract

The nature and manner of proof of a contract implied in fact is well established. *See, e.g., Balafas v. Balafas*, 263 Minn. 267, 273, 117 N.W.2d 20, 25 (1962); *Roberge v. Cambridge Cooperative Creamery Co.*, 248 Minn. 184, 188, 79 N.W.2d 142, 145–46 (1956).

> A contract implied in fact is in all respects a true contract. It requires a meeting of the minds the same as an express contract.
>
>        *     *     *     *     *     *
>
> The question of whether there is a contract to be implied in fact usually is to be determined by the trier of facts as an inference of fact to be drawn from the conduct of the parties.

*Balafas* 263 Minn. at 273, 117 N.W.2d at 25 (quoting *Roberge* 248 Minn. at 188–89, 79 N.W.2d at 145–46)).

In contrast, "[q]uasi contracts are not contracts at all in the legal sense * * *." *Roske v. Ilykanyics*, 232 Minn. 383, 389, 45 N.W.2d 769, 774 (1951).

> The quasi-contractual obligation is raised or imposed by law and is independent of any real or expressed intent of the parties. * * * The right to recover is governed by principles of equity * * *.

*Id.* (citing *e.g. Dusenka v. Dusenka*, 221 Minn. 234, 21 N.W.2d 528 (1946)).

The trial court found there was no agreement between the parties that each would have an interest in the house. Additionally, the court found that the value of the room and board Carl received exceeded his monetary contributions. Because the evidence does not show the trial court's findings to be clearly erroneous, its conclusion that Carl had no interest in the Wheeler property under implied-in-fact or quasi-contract theories is affirmed.

### DECISION

Since there was testimony on both sides of this issue on which the trial court could have based its conclusions, its decision in favor of respondent was not clearly erroneous.

Affirmed.