**Eduardo RIOS, et al., Appellants,**

v.

**JENNIE–O TURKEY STORE, INC., et al., Respondents.**

**No. A10–419.**

Court of Appeals of Minnesota.

Jan. 18, 2011.

Thomas F. Pursell, Daniel J. Sheran, Robert J. Hennessey, Marnie L. DeWall, Kelly G. Laudon, Lindquist & Vennum, PLLP, Minneapolis, MN; and Antonio Tejeda, Law Office of Tejeda Guzman, PLLC, Willmar, MN, for appellants.

Steven J. Wells, Ryan E. Mick, Glenn M. Salvo, Charles K. LaPlante, Dorsey & Whitney, LLP, Minneapolis, MN, for respondents.

Joseph G. Schmitt, Peter D. Gray, Nilan Johnson Lewis, Minneapolis, MN, for amicus curiae Minnesota Chamber of Commerce.

Considered and decided by SHUMAKER, Presiding Judge; WRIGHT, Judge; and COLLINS, Judge.*

## OPINION

SHUMAKER, Judge.

This is an appeal from summary judgment dismissing claims asserted by a certi-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

fied class under the Minnesota Fair Labor Standards Act (MFLSA) and the common law of contracts. Because there are no genuine issues of material fact and judgment was appropriate as a matter of law, we affirm.

## FACTS

The broad question presented to us is whether the district court erred in concluding that certain employees have been paid for all tasks they performed for their employers under their employment contract and consistent with the MFLSA. Because this appeal is taken from the district court's award of summary judgment to the employers, we note that the dispositive facts, summarized briefly below for context, are not in dispute. In their brief, appellants concede that they "agree with virtually all of the factual findings" from various court orders but that they "believe the lower court erred on the law." Other allegedly disputed matters noted below do not raise genuine issues of material fact because they are unsupported by the evidence.

Respondent Jennie–O Turkey Store, Inc. operates six turkey-processing plants in Minnesota. Appellants are current or former production-line employees of Jennie–O who receive hourly wages for regular work hours and for overtime.

To meet sanitation and safety standards, Jennie–O requires appellants to wear certain gear and equipment, such as boots, pants, smocks, gloves, and hats. Before they start their shifts, appellants must "don," that is, put on, the necessary gear and equipment, and they "doff," or remove, it at the completion of their shifts. They also partially don and doff these items for meal breaks. There is no dispute that donning and doffing are conditions of their employment.

Jennie–O has used two different methods to record the times of the start and the end of shifts. Prior to 2007, there was either a pre-set start time, or a supervisor would "swipe" a time card to start and end a shift. The shift ended with individual time-card swipes. From and after 2007, the start and conclusion of a shift was determined by individual time-card swipes. Appellants contend that neither timekeeping method fully captures the time required for mandated donning and doffing, and that these timekeeping deficits have resulted in the underpayment of their wages in violation of their contracts and the MFLSA.

Viewing the facts in a light most favorable to appellants, the district court ruled that, although they were not paid for some of their donning and doffing time, that time never exceeded eight hours per employee during a week and thus did not violate the MFLSA 48–hour workweek rule. The court said: "Even though [appellants] were not paid for every minute spent donning and doffing, they were paid according to the law for overtime compensation." Furthermore, the court held that there was no breach of contract because compensation for donning and doffing was not a part of the employment agreements.

Contending that the district court erred in its interpretation and application of controlling law and in its ruling on the contract claim, appellants brought this appeal.

## ISSUES

I. Did the district court err by dismissing appellants' claims under the MFLSA?

II. Did the district court err by dismissing appellants' contract-based claims?

III. Did the district court err by ordering final judgment, thereby pre-

cluding appellants from pursuing a recordkeeping claim?

## ANALYSIS

We review de novo a district court's grant of summary judgment. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002). Summary judgment is appropriately granted when there are no genuine issues of material fact and judgment is appropriate as a matter of law. Minn. R. Civ. P. 56.03. "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs.*, 644 N.W.2d at 76–77. "[T]o avoid summary judgment, the nonmoving party must present evidence that is 'sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions.'" *Presbrey v. James*, 781 N.W.2d 13, 16 (Minn.App.2010) (quoting *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997)).

## I.

Appellants challenge the dismissal of their claims that Jennie–O violated the MFLSA by (A) failing to pay overtime compensation for hours worked in excess of 48 hours per week, particularly for time spent donning and doffing required gear, and (B) failing to provide a full 30–minute meal break during each eight hours of work. Appellants argue that the district court misinterpreted the relevant provisions of the MFLSA in granting summary judgment on these claims.

"The aim in statutory interpretation is to give effect to the intention of the legislature in drafting the statute." *Milner v. Farmers Ins. Exchange*, 748 N.W.2d 608, 613 (Minn.2008). If the language of a statute is clear and unambiguous, we apply its plain meaning. *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 301 (Minn.2010). If statutory language is ambiguous, "we apply other canons of construction to discern the legislature's intent." *Id.* at 300 (citing Minn.Stat. § 645.16 (2010)). We review de novo the district court's interpretation of a statute. *Milner*, 748 N.W.2d at 613.

## A.

Under the MFLSA, an employee is entitled to compensation at a rate equal to one-and-one-half times his regular rate of pay (overtime compensation), for time worked in excess of 48 hours per workweek. Minn.Stat. § 177.25, subd. 1 (2010), (prohibiting workweeks longer than 48 hours "unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1–1/2 times the regular rate at which the employee is employed"). In this manner, the MFLSA is less restrictive than its federal counterpart, the Fair Labor Standards Act (FLSA), which requires overtime compensation for time worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1) (2006). The rules implementing the MFLSA designate the "workweek" as "[t]he period of time used for determining compliance with" the overtime requirements of the MFLSA. Minn. R. 5200.0170, subp. 1 (2009). The "workweek" in turn is defined as "a fixed and regularly recurring period of 168 hours, seven consecutive 24–hour periods," presumptively the calendar week. *Id.*

The district court granted summary judgment dismissing appellants' statutory overtime claim because appellants could not demonstrate that their compensation fell below the amount required by the MFLSA. The district court determined that appellants' compensation—which included overtime compensation for (undisputed) hours worked in excess of 40 as required by the FLSA—so significantly

exceeded the compensation required under the MFLSA that, even when the disputed donning and doffing time was included in the calculation, the appellants' compensation exceeded that required by the MFLSA. The district court properly viewed the facts in the light most favorable to appellants in reaching this determination.

Appellants assert that the district court erred by employing a "workweek averaging" rule in relation to their overtime claim. Although the district court's determination of Jennie–O's overtime compliance relied upon the construct of a workweek—as is directed by rule 5200.0170—and referred to workweek averaging, the court did not actually engage in any "averaging." Rather, the district court compared the amount of compensation that appellants actually received with the amount to which they were entitled under the MFLSA, and, because the former was greater than the latter, determined that their overtime claim failed as a matter of law.

Appellants also suggest that the district court's analysis improperly creates an "FLSA offset" for determining damages under the MFLSA. To the contrary, appellants are attempting to import the requirements of the FLSA into the determination of whether there has been a violation of the MFLSA. As we noted above, the FLSA is the more restrictive statute, requiring overtime compensation for all time worked in excess of 40 hours per week. Thus, employees who work more than 40 hours in a workweek, but fewer than 48 hours, may have a claim under the FLSA but not under the MFLSA. Nothing in the MFLSA compels or allows courts to take into account compensation paid or due under the FLSA in determining whether there has been a violation of the MFLSA.

The district court did not err by granting summary judgment on appellants' statutory overtime claim. The district court properly analyzed appellants' statutory overtime claim by comparing the amount due under the MFLSA to the amounts actually received by appellants. And because appellants cannot demonstrate that they were paid less than the MFLSA required, the district court properly dismissed the statutory overtime claim.

### B.

■ With respect to meal breaks, the MFLSA provides: "An employer must permit each employee who is working for eight or more consecutive hours sufficient time to eat a meal." Minn.Stat. § 177.254, subd. 1 (2010). The statute does not, however, "require[ ] the employer to pay the employee during the meal break." *Id.,* subd. 2 (2010). Under the Minnesota Rules, an employer must pay an employee for meal periods that are not bona fide:

> Bona fide meal periods are not hours worked. Bona fide meal periods do not include rest periods such as coffee breaks or time for snacks. The employee must be completely relieved from duty for the purpose of eating regular meals. Thirty minutes or more is ordinarily long enough for a bona fide meal period. A shorter period may be adequate under special conditions.

Minn. R. 5200.0120, subd. 4 (2009). Read together, these provisions (1) require an employer to give a meal break of sufficient length to eat a meal during each eight-hour shift, and (2) allow employers to deduct from hours worked only meal breaks that are bona fide, which generally means that employees are completely relieved from work for at least 30 minutes.

The district court dismissed appellants' statutory meal-break claim, reasoning that there is no bright-line requirement for a

30–minute meal under Minnesota law. Appellants argue that the district court missed the point, asserting that the issue is not whether the 30–minute break is *required* but whether a break of shorter length is *deductible*. Appellants, however, neither pleaded this theory nor did they argue it to the district court on summary judgment. And we generally do not consider issues not presented to and decided by the district court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). We further note that, to the extent that appellants alleged unpaid donning and doffing time before and after breaks, this unpaid time was included in the analysis of appellants' statutory overtime claim. Accordingly, we conclude that the district court did not err by dismissing appellants' statutory meal-break claim.

## II.

■ Appellants challenge the dismissal of their claims that respondents breached their oral employment agreements by failing to pay overtime compensation for hours worked in excess of 40 hours per week, particularly for time spent donning and doffing required gear, and failing to provide a 30–minute meal break and two 15–minute rest breaks during each eight hours of work. Each of appellants' contract claims rests on their assertion that respondents agreed to pay them for time spent donning and doffing.

■■ The district court rejected appellants' contract-based claims, determining that respondents contracted with appellants for employment, but that compensation for donning and doffing was not a term of that contract and that there was no subsequent, unilateral offer to compensate for donning and doffing. Both the existence and terms of an oral contract are issues of fact, generally to be decided by the fact-finder. *Cherne Contracting Corp. v. Marathon Petroleum Co.,* 578 F.3d 735, 740 (8th Cir.2009); *see also Roske v. Ilykanyics,* 232 Minn. 383, 393–94, 45 N.W.2d 769, 776 (1951) (assigning error in district court's determination of terms of oral contract). Notwithstanding, disputes over the existence or terms of oral agreements do not necessarily preclude summary judgment. *Cherne,* 578 F.3d at 740. "Rather, as with the analysis for summary judgment in any case, where no reasonable jury could find the facts necessary to entitle a plaintiff to relief, summary judgment remains appropriate." *Id.*

■ Minnesota courts apply an objective standard of contract formation. *Riley Bros. Constr., Inc. v. Shuck,* 704 N.W.2d 197, 202 (Minn.App.2005) ("Minnesota follows the objective theory of contract formation, under which the parties' outward manifestations are determinative, rather than either party's subjective intent."). Here, the record is devoid of any evidence that Jennie–O offered to pay appellants for time spent donning and doffing.[1] To the contrary, appellants have either conceded that they never discussed with respondents whether they could be paid for donning and doffing or admitted that they cannot recall any such discussions. Appellants attempt to rely on provisions in employee handbooks as reflecting an agreement to pay for donning and doffing, but

---

1. Appellants assert that the district court erred by placing on them the burden of proving the terms of their oral employment agreements, relying on Minn.Stat. § 181.56 (2010) for the proposition that the employer has the burden to prove employment terms. We agree with respondents that section 181.56 must be read in connection with Minn.Stat. § 181.55 (2010), which requires written notice of certain employment terms not at issue here. Moreover, appellants indisputably do have the burden to "present specific facts showing that there is a genuine issue for trial." Minn. R. Civ. P. 56.05.

fail to cite any language identifying such a promise.[2] Appellants assert that the dearth of evidence demonstrates the existence of a genuine issue of material fact to be decided by the jury. But we conclude that, on this record, no reasonable jury could find that the parties reached an agreement that appellants would be paid for donning and doffing.

Appellants assert that such a conclusion leaves undefined a term of the contract necessary to its operation, i.e., the "work" to be compensated. In so arguing, appellants rely on § 204 of the Restatement (2d) of Contracts, which allows the court to supply a missing, necessary term that is "reasonable in the circumstances." The Second Restatement also recognizes, however, that "[p]art performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been formed." Restat. (2d) of Contracts § 34(2); *see also id.* § 22(2) (providing that "[a] manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined"). Applying these principles, we conclude that the allegedly undefined term became certain when appellants commenced work and when Jennie–O's payroll policies and practices were applied to determine their compensation.

Appellants also attempt to incorporate into their oral employment agreements the MFLSA definition of "hours worked" and the FLSA requirement for overtime compensation for hours worked in excess of 40 per workweek, citing the principle that "parties to a contract are presumed to enter into their engagements with refer-

ence to the applicable law." *Indianhead Truck Line, Inc. v. Hvidsten Transp. Inc.,* 268 Minn. 176, 128 N.W.2d 334, 341 (1964); *see also* 11 Samuel Williston et al., *A Treatise on the Law of Contracts* § 30:19, at 203–04 (4th ed.1999). ("Except where a contrary intention is evident, the parties to a contract . . . are presumed or deemed to have contracted with reference to existing principles of law.").

This rule of incorporation, however, is not without limitation. As one court has explained:

It is true that parties . . . are presumed to contract with reference to existing law. But reference to such law is generally effected in cases of contract "construction," i.e., determination of the unexpressed implications of what is written, rather than in instances of "interpretation" of the written language. [State statutory law] is not a silent factor in every contract executed in this State in the sense that the statutory definitions . . . govern the interpretation of every ambiguous phrase in a private agreement. With respect to the process of interpreting contractual language, statutes and common law principles are only part of the surrounding circumstances, and should be so considered.

*Deerhurst Estates v. Meadow Homes, Inc.,* 64 N.J.Super. 134, 165 A.2d 543, 552–53 (App.1960). The Minnesota cases that appellants cite are consistent with this understanding. *See Indianhead,* 128 N.W.2d at 341 (considering appellate rules in determining whether an order was a "final order" within the meaning of the parties'

---

**2.** The handbooks include disclaimers likely sufficient to preclude contract formation. *See, e.g., Audette v. Northeast State Bank of Mpls.,* 436 N.W.2d 125, 127 (Minn.App.1989) (affirming summary-judgment dismissal of handbook-based contract claim because dis-

claimer language negated intent to form contract). But appellants purportedly rely on the handbook provisions as reflecting the terms of an earlier oral agreement, as opposed to creating contractual obligations in and of themselves.

contract); *Larkin v. Glens Falls Ins. Co.,* 80 Minn. 527, 531–32, 83 N.W. 409, 410–11 (1900) (considering ordinance prohibiting repair of fire-damaged building in determining whether building was a "total loss" within the meaning of an insurance contract).

Appellants invite this court to refer to the FLSA and MFLSA, not to aid in the interpretation or construction of established written contract terms, but to imply terms into an oral employment agreement. Finding no support for this extension of the caselaw, we decline to do so.

Because there is no evidence to support appellants' assertion of an agreement to pay for time spent donning and doffing required gear, we conclude that the district court did not err by granting summary judgment dismissing appellants' contract-based claims.

### III.

■ Appellants assert that the district court, having dismissed all pleaded counts of liability, erred by ordering a final judgment because the allegations in the complaint support a claim for recordkeeping violations of the MFLSA. Appellants concede that the claim was not asserted as a count in the complaint, and that they never sought to amend the complaint to add that count. Moreover, appellants did not argue—and thus the district court did not address—the recordkeeping claim in connection with the summary-judgment motion preceding the entry of final judgment.[3] Accordingly, the issue has been waived, and we decline to reach it. *See Funchess v. Cecil Newman Corp.,* 632

N.W.2d 666, 673 (Minn.2001) ("In deciding a matter before it, a reviewing court generally may consider only those issues that the record shows were presented to and considered by the trial court."); *Hollywood Dairy, Inc. v. Timmer,* 411 N.W.2d 258, 260 (Minn.App.1987) (declining to consider whether complaint could be construed to encompass claim because "[t]hat argument was neither briefed nor argued to the trial court").

■ Even were the issue not waived, we would reject the argument that the recordkeeping claim was within the scope of the pleadings, such that appellants should have been permitted to pursue the claim. The Minnesota Supreme Court has held that, "in the furtherance of justice, pleadings are to be liberally construed," *Milner,* 748 N.W.2d at 618 (quotation omitted), and that "[t]he primary function of notice pleading is to give the adverse party fair notice of the theory on which the claim for relief is based," *Goeb v. Tharaldson,* 615 N.W.2d 800, 818 (Minn. 2000). Consistent with this purpose, parties are allowed to amend pleadings freely "when justice so requires." Minn. R. Civ. P. 15.01. Notwithstanding, a party that "fails to take advantage of this procedure . . . is bound by the pleadings unless the other issues are litigated by consent." *Roberge v. Cambridge Co-op. Creamery Co.,* 243 Minn. 230, 234, 67 N.W.2d 400, 403 (1954).

Appellants' initial complaint makes a single reference to the recordkeeping requirements of the MFLSA in the class-action allegations, identifying as a common

---

**3.** In an earlier motion for summary judgment, the parties briefed and the district court heard argument regarding whether, should the motion be granted, final judgment would be appropriate, or whether there was a surviving recordkeeping claim. Because the court denied that motion, it did not need to address the existence or viability of the recordkeeping claim. When respondents again moved for summary judgment, the motion was heard by a different judge, and appellants did not renew their argument regarding the recordkeeping claim.

issue "[w]hether Defendant accurately recorded and retained accurate records of Plaintiffs' compensable work and that of the Class as required by Minnesota Statute § 177.30." Appellants' later assertion of a punitive-damages claim includes additional references, citing the statute in the caption of the claim and alleging, in three paragraphs, Jennie–O's intentional disregard for the probability of injury from the failure to record all hours worked "so as to comply with the requirements of Minnesota law that proper and accurate records be kept of all such hours worked." We conclude that these limited references, particularly in light of the otherwise explicit nature of the counts pleaded in the complaint, were not sufficient to put Jennie–O on notice of a recordkeeping claim.

Appellants assert that *Milner* is on point and dictates reversal for further proceedings on the recordkeeping claims. In *Milner*, the district court found recordkeeping violations and imposed civil penalties despite the plaintiff's failure to plead a recordkeeping claim in the complaint. 748 N.W.2d at 618–19. However, in *Milner* there was a trial, and the supreme court, in concluding that the penalties were properly imposed, relied in part on the fact that evidence regarding recordkeeping violations was introduced at trial. *Id.* at 619. Accordingly, *Milner* is distinguishable and does not control the result here.

Because we conclude that the district court did not err by granting summary judgment in favor of Jennie–O, we need not reach appellants' argument that the district court erred by ordering the return of certain documents inadvertently produced by respondents. Nor do we reach Jennie–O's challenges, by notice of related appeal, to the district court's orders granting class certification, allowing an amendment to assert a claim for punitive damages, and declining to strike certain of appellants' expert opinions.

## DECISION

Because there are no genuine issues of material fact and the district court properly determined that appellants' MFLSA and contract-based claims fail as a matter of law, and because we reject, as both waived and unavailing, appellants' argument that they should be allowed to pursue a recordkeeping claim, we affirm judgment in favor of Jennie–O.

**Affirmed.**